Janine WOERNER, et al., Plaintiffs,

v.

Richard BRZECZEK, et al., Defendants.

No. 81 C 222.

United States District Court,
N. D. Illinois, E. D.

July 21, 1981.

Wayne B. Giampietro, Kathrin A. Koenig, Stephen G. Daday, DeJong, Poltrock & Giampietro, Chicago, Ill., for plaintiffs.

Robert L. Abraham, Asst. Corp. Counsel, Chicago, Ill., for defendants.

1. All these "facts" are of course taken from the Complaint's allegations. No actual findings of

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Plaintiffs Janine Woerner ("Woerner") and Jesse Valles ("Valles") are Chicago police officers. They bring this action under 42 U.S.C. § 1983 ("Section 1983") alleging two Fourteenth Amendment claims: sexual harassment of Woerner in violation of the Equal Protection Clause and retaliatory acts against both plaintiffs in violation of their First Amendment rights (as incorporated into the Fourteenth Amendment). Two other counts assert pendent jurisdiction claims. All defendants have moved to dismiss the Complaint under Fed.R.Civ.P. 12(b)(6). For the reasons stated in this memorandum opinion and order that motion is granted in part and denied in part.

### Facts [1]

In March 1979 Woerner was assigned to duty as a patrol officer in Chicago's 20th District under the direct supervision of Lieutenant John Thedos ("Thedos"). Thedos commenced a series of actions designed to harass Woerner including:

(1) embarrassing and belittling remarks in front of fellow officers;

(2) repeated sexual advances;

(3) interception of mail and phone messages; and

(4) harassment of male police officers who requested to work with Woerner.

All such actions were directed at Woerner because she is a woman.

About April 25, 1979 Valles and Woerner were assigned to be patrol partners under Thedos' supervision. Both were then subjected to constant ridicule during roll call, in the station and in the field.

On January 1, 1980 Woerner and Valles were reassigned to the 14th District under the supervision of District Commander Paul Jankowski ("Jankowski"). Jankowski informed Woerner that she had come from the 20th District with a negative reputation and also inquired as to the existence of a

fact are made or implied by this opinion.

sexual relationship between Woerner and Valles (a married man).

On March 31, 1980 Valles complained to Deputy Chief John Townsend ("Townsend") about the treatment Woerner was receiving. Townsend failed to take any corrective action. Within a few days Jankowski chastised Valles for having made such a report. Thereafter Thedos, Jankowski and others acted in concert to penalize plaintiffs for complaining about their treatment.

On August 5, 1980 Woerner was injured while on duty. Daniel Williamson ("Williamson"), Acting Coordinator of the Police Department Medical Section, commenced a series of actions designed to harass Woerner. Those actions included repeatedly requiring Woerner, then on crutches, to report to the Medical Section of the Police Department for no apparent or stated reason. On one of those occasions Woerner fell to the floor and reinjured herself. When Valles registered a complaint over the medical harassment Woerner was receiving, he was charged with insubordination.

Plaintiffs exhausted all intradepartmental remedies, including directing grievances to Superintendent of Police Richard Brzeczek ("Brzeczek"), who also refused to take action against the other defendants (thus tacitly approving their conduct). No action was taken on any of the grievances, so plaintiffs brought their complaint of sex discrimination to Channel 5 News. As a result, Thedos registered a complaint that triggered an Internal Affairs Division investigation of both plaintiffs.

### Count I

Count I alleges the two Section 1983 causes of action referred to earlier. They will be dealt with in turn.

### 1. Sexual Harassment of Woerner

Many of Woerner's troubles stem from her initial encounter with Thedos. She was subjected to a long series of harassing ac-

tivities because she was female. Although she was never fired, the Complaint's allegations paint a picture of an intolerable working environment and severely dampened career opportunities.

▮ Such allegations of sexual harassment are creating a growing body of employment discrimination law. However Woerner chose not to use an administrative remedy under Title VII, instead seeking direct relief under Section 1983 for a violation of the Equal Protection Clause. While Woerner's failure to pursue a Title VII claim will not bar her Section 1983 claim, *see, Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–61, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975) (simultaneous Title VII and Section 1981 claims permissible),[2] neither the parties nor this Court have found a case addressing the question whether sexual harassment can constitute a violation of the Equal Protection Clause.

Were this a Title VII case, this Court would have no difficulty in upholding the Complaint. It is in full agreement with the decision in *Bundy v. Jackson*, 641 F.2d 934, 943–46 (D.C.Cir.1981), where the Court held that Title VII permits a cause of action where a woman has been subjected to sexual harassment even if she has not been deprived of any tangible job benefits. Upon analysis this Court has determined that though the conceptual route to be traveled under Section 1983 is different from that under Title VII, the result is the same.

▮ As a threshold matter, it is well settled that claims of sex discrimination are cognizable under the Equal Protection Clause. *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Moreover, an Equal Protection Clause claim need not involve a policy toward an entire class of persons. It is sufficient if a state acts so as to discriminate intentionally against one

---

**2.** Woerner cannot, however, simply seek to redress a violation of Title VII rights under Section 1983. *Hall v. Board of County Commis-* sioners of Frederick County, 509 F.Supp. 841, 848 (D.Md.1981); *LeBoeuf v. Ramsey*, 503 F.Supp. 747, 754 (D.Mass.1980).

person because of that person's membership in a discrete class.[3]

■ Plaintiffs' Complaint charges that Woerner was intentionally treated differently from her fellow officers because of her sex. As this Court and others have held (though in the Title VII context), sex discrimination exists whenever a demand is made on an employee of one sex that would not be made of an employee of the opposite sex. *Wright v. Methodist Youth Services, Inc.*, 511 F.Supp. 307, 310 (N.D.Ill.1981); *Barnes v. Costle*, 561 F.2d 983 (D.C.Cir. 1977). Clearly the treatment Woerner received, such as Thedos' alleged sexual advances, would not have been directed toward a male police officer.

■ Because Woerner has properly alleged state action that classifies on the basis of sex,[4] that action must be subjected to a careful scrutiny, *Davis v. Passman*, 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979):

> "To withstand scrutiny under the Equal Protection component of the Fifth Amendment's Due Process Clause, 'classification by gender must serve important governmental objectives and be substantially related to achievement of those objectives.' *Craig v. Boren*, 429 U.S. 190, 197 [97 S.Ct. 451, 457, 50 L.Ed.2d 397] (1976)." *Califano v. Webster*, 430 U.S. 313, 316–17, 97 S.Ct. 1192, 1194, 51 L.Ed.2d 360 (1977).

Woerner has certainly charged acts entirely unrelated to a legitimate governmental objective. No such legitimate objective is served when a supervisor propositions a patrol officer sexually.

This Court need not now decide whether individual actions such as the use of a sexually-oriented epithet ("that broad") might state a federally cognizable claim. Here Woerner has alleged a long and pervasive course of conduct that clearly constitutes discrimination on the basis of sex.[5] That being the case, it requires little added analysis to uphold the Complaint against all defendants.[6]

### a. *Thedos*

As indicated in the "Facts" section of this opinion, the allegations against Thedos are really the central focus of the sexual harassment claim. Thedos' claimed sexual propositioning of Woerner is itself sufficient to state a cause of action.

### b. *Jankowski*

Though Thedos was the alleged instigator of sexual harassment, there are a number of allegations that Jankowski became an active participant in the pattern of discriminatory activity against Woerner. They are plainly sufficient to withstand a motion to dismiss.

---

**3.** *See, e. g., Adickes v. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970) (emphasis added):

> *[O]ur cases make clear that petitioner will have made out a violation of her Fourteenth Amendment rights and will be entitled to relief under § 1983 if she can prove that a Kress employee, in the course of employment, and a Hattiesburg policeman somehow reached an understanding to deny Miss Adickes service in the Kress store, or to cause her subsequent arrest because she was a white person in the company of Negroes.*

**4.** All defendants are alleged to have acted "under color" of state law, a necessary condition of Section 1983 liability. Under familiar doctrine, the fact that public officials act in contravention of rather than in accordance with their duties does not impair the force of such allegations. *United States v. Classic*, 313

U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941).

**5.** In one respect a lower threshold of discriminatory activity is necessary to state a cause of action under the Equal Protection Clause than under Title VII. In *Bundy v. Jackson* the Court had difficulty in determining whether sexual harassment that did not deprive a plaintiff of a tangible employment benefit constituted a violation of Title VII, mainly because Title VII makes unlawful only employment practices relating to "terms, conditions, or privileges of employment...." But the Equal Protection Clause has no such limitation.

**6.** On defendants' motion to dismiss plaintiffs enjoy the benefit of an expansive reading of the allegations in their Complaint. *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957).

### c. *Williamson*

It is difficult to determine the precise nature of the allegations against Williamson. Though Williamson is clearly charged with a series of harassing actions, Woerner has not specifically alleged any prohibited motivation for those actions. But when read in the light most favorable to plaintiffs, the allegations against Williamson can state a claim for both sexual harassment and violation of Woerner's First Amendment rights. Williamson's actions came after Woerner had already encountered difficulties with Thedos and Jankowski. It can fairly be inferred from the allegations that Williamson's actions were generated both by Woerner's gender and by the exercise of plaintiffs' First Amendment rights (in addition, Complaint ¶ 23 charges defendants collectively with a "pattern of discrimination").

### d. *Brzeczek and Townsend*

Both supervisory defendants are alleged to have participated in the sexual harassment of Woerner by failing to act when confronted with evidence of the other defendants' discriminatory activity. While such supervisory personnel cannot be held liable on a theory of respondeat superior, they do bear direct responsibility if they in any way caused the constitutional deprivation. *Cook v. City of Miami*, 464 F.Supp. 737 (S.D.Fla.1979). Here it is charged that both Brzeczek and Townsend were made aware of the situation and failed to restrain the activities of their subordinates. Accordingly a cause of action has been stated against Brzeczek and Townsend for having caused the continuation of unconstitutional conduct.

### e. *City of Chicago*

Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978),

respondeat superior notions do not support an action against a municipality. It is essential that plaintiffs' claimed injury have resulted from a policy statement, ordinance, regulation or custom of that municipality.

Complaint ¶ 6 contains the only allegation against the City of Chicago, simply parroting the *Monell* requirement:

> During all times herein mentioned, Defendants, and each of them, were acting under color of the statutes, ordinances, rules, regulations, customs and usages of the State of Illinois, County of Cook, and City of Chicago, Department of Police.

That allegation may be read two ways—as merely stating the "state action" predicate for the individual defendants' liability (in which event the City would be included only on a respondent superior basis and should be dismissed) or as stating that the individual defendants' discriminatory conduct was pursuant to a "custom and usage" of the City (in which improbable event the City could bear liability as well). Because of the liberal way in which complaints must be read on motions to dismiss, as a matter of *pleading* such allegations are sufficient to state a claim against a municipality. *Thompson v. Village of Evergreen Park*, 503 F.Supp. 251 (N.D.Ill.1980).[7]

### 2. *Inhibition of First Amendment Rights*

Both Woerner and Valles allege a series of retaliatory acts that started soon after they lodged complaints about defendants' sexual harassment of Woerner. For example, plaintiffs say they received lower efficiency ratings as a result of the complaints they lodged with supervisory personnel. Such acts, they contend, violate their First Amendment right to freedom of speech.

In *McGill v. Board of Education*, 602 F.2d 774, 777 (7th Cir. 1979), our Court of Appeals held that the State may constitution-

---

7. As noted in *Thompson,* should it become evident at a later stage in this action that plaintiffs have no basis for alleging that sexual harassment is a custom or policy of the City of Chica-

go, plaintiffs may well be subject to an assessment of fees under 42 U.S.C. § 1988. *Hernas v. City of Hickory Hills*, No. 80 C 2316 (N.D.Ill. July 1, 1981).

ally place only two limits on a public employee's right to speak:

> First, speech that is so disruptive as to impede the teacher's performance or to interfere with the operation of the school may be proper grounds for discipline. Second, if the speech does not involve matters of public interest it may not be entitled to constitutional protection.

Under the *McGill* standard plaintiffs' Complaint cannot succumb to a motion to dismiss. As to the first part of the test, the registering of internal grievances can scarcely be said to interfere with the proper operation of the Police Department. As for the second, an attempt to demonstrate that supervisory personnel within the Chicago Police Department sexually harassed a female employee could be a matter of public interest. Because the complaints lodged by Woerner and Valles may be entitled to constitutional protection, any retaliatory acts violate their First Amendment rights.[8]

As for Thedos, Jankowski and Williamson, the Complaint states specific allegations of harassment actions taken by each shortly after complaints were lodged with their supervisors. But the Complaint fails to state any allegation against Townsend or Brzeczek for violation of plaintiffs' First Amendment rights. While each was made aware of the sexual harassment of Woerner, there was no allegation that either was ever made aware of the retaliatory acts taken against plaintiffs. Accordingly plaintiffs cannot pursue their claim against Townsend or Brzeczek for violation of their First Amendment rights. For the same reasons stated earlier (but subject to the same caveat), plaintiffs *can* maintain their cause of action against the City of Chicago.

8. This opinion is not a ruling that plaintiffs' speech was necessarily protected by the First Amendment. Any such determination must await further development of the relevant facts. This Court holds only that the Complaint alleges speech that might receive First Amendment protection.

9. None of the remaining discussion in this opinion owes any thanks to plaintiffs' counsel.

## Count II

In Count II Woerner alleges that defendants Thedos and Jankowski made slanderous statements about sexual activity between Woerner and Valles. Those allegations are a plain and simple statement of a defamation action over which this Court has pendent jurisdiction.

## Count III

In Count III plaintiffs allege that defendants intentionally and maliciously interfered with plaintiffs' pursuit of their profession by:

(1) harassing male officers who attempted to work with Woerner; and

(2) harassing plaintiffs in the performance of their duties.

Plaintiffs have not proffered, and this Court has been unable to find, any statutory or case law support for such a cause of action.[9]

Any pendent claim must of course find its roots in Illinois law. Illinois does recognize two somewhat related causes of action: interference with contractual relationships and interference with prospective economic advantage. But Count III fails to state a cause of action under either of those theories.

Actions for interference with contractual relationships require plaintiffs to show (*Marcus v. Wilson*, 16 Ill.App.3d 724, 730, 306 N.E.2d 554, 559 (1st Dist. 1973)):

(1) existence of a valid contract;

(2) knowledge by defendants of the existence of the contract;

(3) inducement by defendants to the other party to breach said contract; and

(4) damages resulting from the breach.

They do not discharge their responsibility to the Court or opposing counsel by responding in a conclusionary and unsupported fashion that the facts alleged "state a cause of action." It is not the Court's duty to ferret out the basis for a claim, and it might well simply have declined the imposition on its law clerk and itself by rejecting Count III out of hand.

Plaintiffs here have failed to plead that defendants have caused anyone to breach a contract with plaintiffs.

 Actions for interference with prospective economic advantage have somewhat different elements (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 16 Ill.App.3d 709, 713–14, 306 N.E.2d 549, 553 (1st Dist. 1973), *rev'd on other grounds*, 61 Ill.2d 129, 334 N.E.2d 160 (1975)):

(1) plaintiffs' reasonable expectancy of entering into a valid business relationship;

(2) defendant's knowledge of that expectancy;

(3) intentional interference by defendant that prevents the expectancy from ripening; and

(4) damages resulting from defendant's actions.

Plaintiffs' charge that they were "diverted from the proper performance of their duties" does not appear to fit under that rubric either.

Accordingly plaintiffs' Count III must be dismissed.

### Conclusion

Defendants' motion to dismiss Count I is denied except that plaintiffs cannot pursue the First Amendment portion of their claim against Townsend and Brzeczek. Defendants' motion to dismiss Count II is denied. Defendants' motion to dismiss Count III is granted. Defendants are ordered to answer the surviving portions of the Complaint on or before August 3, 1981.