David **HUEBSCHEN**, Plaintiff-Appellee,

v.

**DEPARTMENT OF HEALTH AND SOCIAL SERVICES and Jacquelyn Rader, Defendants-Appellants.**

Nos. 82–3113, 82–3114.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1983.

Decided Sept. 13, 1983.

Rehearing and Rehearing En Banc Denied Nov. 7, 1983.

Robert D. Repasky, Wis. Dept. of Justice, Madison, Wis., for defendants-appellants.

Michael R. Fox, Madison, Wis., for plaintiff-appellee.

Before PELL and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*

PELL, Circuit Judge.

This is an appeal from a judgment of the district court, after a jury trial, awarding the appellee David Huebschen compensatory and punitive damages under 42 U.S.C. § 1983 for alleged sexual harassment perpetrated by his supervisor in the course of his employment. The court also ordered that Huebschen be reinstated at an equivalent position.

The appellants put forth three arguments in urging us to reverse the district court. First, they assert that a claim under section 1983 based upon Title VII, 42 U.S.C. § 2000e et seq., may not be maintained because Congress intended Title VII to be the exclusive remedy in this area of employment discrimination. Second, they contend that an individual who could not be the subject of the Title VII action directly may not be the subject of an action under section 1983 based upon Title VII. Third, they contend that there is insufficient evidence of sexual harassment to support the judgment.

## I.  FACTS

At the time of the relevant events, David Huebschen was an employee of the Wisconsin Department of Health and Social Services (DHSS). On December 17, 1978, he received a one-year probationary promotion to a supervisory position under the supervision of appellant Jacquelyn Rader in the

---

* Robert A. Grant, Senior District Judge for the Northern District of Indiana, sitting by designation.

Bureau of Social Security Division Insurance, a subdivision of DHSS.

The jury could have found the facts as follows: By the spring of 1979, Huebschen and Rader had developed a close friendship that included exchanges of friendly notes and invitations for drinks after work. By September, Rader had encouraged Huebschen to turn the friendship into a romance. Late in that month, she suggested that he reserve a motel room for the two of them, which he did. Apparently, this was the only such liaison the two had.

Huebschen testified that the relationship between the two became "up and down" after that because, beginning in October, Rader was sometimes unfriendly to him and even attempted to avoid him on occasion. Finally, on November 12, after Rader had made a sexually insulting remark to him, Huebschen told her that "this sexual stuff just ha[s] to stop" and that he just wanted to be a friend. On November 19, Rader called Huebschen into her office and told him that there were problems with his job.

Rader made a written request that DHSS extend Huebschen's probationary period until March 1980, but the agency told her that she must either recommend that he be terminated from the program or hired permanently. On November 26, she recommended that the probationary period be terminated. The bureau director accepted the termination recommendation on December 6 and the termination became effective on December 15, 1979. Huebschen returned to his former position of Disability Determination Specialist.

There was no testimony that Rader ever told Huebschen that if he did not comply with her sexual requests or have an affair with her he would receive an unfavorable recommendation. Huebschen did testify, however, that soon after December 6, Rader called to warn him that if he ever discussed the true circumstances of his demotion she would make sure that he lost all of his friends and that everyone knew that he was a chronic liar.

On December 24, 1981, Huebschen brought this action against DHSS, Rader,

Bernard Stumbras and Robert Cohen (Rader's supervisors), and the United States. He brought claims under Title VII against DHSS, section 1983 claims against the individual defendants, and also made additional claims under state law and the Due Process Clause. The United States was dismissed as a party prior to trial and the due process and state law claims were dismissed by stipulation. The equal protection claim at issue on this appeal, *see* Part IIB, *infra,* was raised and denied at trial.

Trial began on July 13, 1982. The section 1983 claims were tried before a jury and the Title VII claim against DHSS was tried before the court, with the jury's verdict advisory as to that claim. On July 17, the jury found, in a special verdict, that Huebschen's refusal to submit to Rader's sexual demands was a motivating factor in the decision to terminate plaintiff's probation, and that his probation would not have been terminated in the absence of the sexual harassment. The jury found both Rader and Stumbras liable. On July 20, in a trial on damages, the jury awarded Huebschen compensatory and punitive damages against Rader of $90,000 and $24,600 respectively.

The court entered its judgment on July 27. The parties agreed on the amount of back pay and the position to be tendered to Huebschen. The appellants then filed motions for a new trial, motions to alter or amend the judgment, and motions for judgment notwithstanding the verdict. On August 27, the court granted judgment n.o.v. with respect to Stumbras, and granted a new trial as to damages with respect to Rader if the appellee did not accept a reduced award of $10,000 compensatory and $15,000 punitive damages. The court further held that DHSS had stipulated to liability on July 27 and accordingly did not further discuss the Title VII claim against it. The district court issued a written opinion setting out its holding on September 7. *Huebschen v. Department of Health & Social Services,* 547 F.Supp. 1168 (W.D.Wis. 1982).

The court entered its final judgment on November 16, 1982. This appeal followed.

## II. DISCUSSION

### A. Section 1983 and Title VII

■ Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e–2(a)(1), provides that "[i]t shall be an unlawful practice for an employer . . . to discharge any individual . . . because of such individual's . . . sex." EEOC guidelines provide that sexual harassment is a violation of section 703 of Title VII:

> Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment [or] (2) submission to or rejection of such conduct by an individual is used as a basis for employment decisions affecting such individual
> . . . .

29 C.F.R. § 1604.11(a) (1982).

The appellants contend that the appellee's action under 42 U.S.C. § 1983 is barred because Congress intended that Title VII be the exclusive remedy for employment discrimination of this kind. We need not reach this question, however, because even if Title VII does not preempt section 1983 in this area, a plaintiff cannot bring an action under section 1983 based upon Title VII against a person who could not be sued directly under Title VII.

Both parties agree that Huebschen could not have maintained an action against Rader under Title VII because she was not an "employer" within the meaning of section 703(a)(1). The appellants contend that, as a result, Huebschen cannot bring an action against Rader under section 1983 based upon Title VII because relief under the former is limited to that available under the latter.

We begin by noting that "§ 1983 by itself does not protect anyone against anything. . . . [It] does not provide any substantive rights at all." *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979). A plaintiff bringing an action under section 1983 must show a deprivation of rights, privileges, or immunities "secured by the Constitution and laws." In this case, the substantive basis of the section 1983 claim is a violation of Title VII.

The effect of allowing a plaintiff to bring an action under section 1983 based upon Title VII against a defendant who could not be sued directly under Title VII would be to enlarge the relief available to one bringing an action for a violation of Title VII. Plaintiffs proceeding under section 1983 for violations of Title VII would obtain a substantive enlargement of the latter if they were able to sue a class of persons immune from actions brought directly under Title VII.

This circuit has not previously considered whether persons not amenable to suit under Title VII could nevertheless be subject to an action under section 1983 based upon Title VII. The Second and Fifth Circuits, however, have held that enforcing Title VII through section 1983 grants no greater substantive rights to a plaintiff than proceeding directly under the former statute.

In *Rivera v. City of Wichita Falls*, 665 F.2d 531 (5th Cir.1982), the Fifth Circuit said that "when § 1983 is used as a parallel remedy with Title VII in a discrimination suit, the elements of the substantive cause of action are the same under both statutes." *Id.* at 534 n. 4 (citing *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir.1980)). Similarly, in *Carrion v. Yeshiva University*, 535 F.2d 722, 729 (2d Cir.1976), the Second Circuit held that "[n]o greater or lesser protection against discriminatory practices is provided" by section 1983 than by Title VII. *Accord, Wintz v. Port Authority*, 551 F.Supp. 1323, 1325 (S.D.N.Y. 1982).

We see no basis for reaching a result different from that of the Second and Fifth Circuits. Rader was not an employer and thus did not violate Title VII. Therefore, there is no legal basis for allowing Huebschen to bring a section 1983 suit against

her based on Title VII when he could not sue her directly under Title VII.

The appellee does not suggest to us how section 1983 gives a plaintiff the right to bring such an action, except to note that an action under that statute need not exactly follow the procedural rules—such as time limitations and forms of relief—contained in the underlying statute, *see, e.g., Bradshaw v. Zoological Society,* 569 F.2d 1066, 1068 (9th Cir.1978) (punitive damages available in a § 1983 action based on Title VII where no such relief allowed under the latter). Even if such procedural variations are allowed, nothing in the language of the statute would permit us to conclude that section 1983 provides the enlarged substantive relief sought here.

Accordingly, we hold that the district court erred in holding that the appellee could maintain an action against the appellant Rader under section 1983 based upon Title VII.

### B. The Equal Protection Clause

The appellee contends that, alternatively, the judgment of the district court should be affirmed on the basis that the appellants' conduct violated the Equal Protection Clause. The district court rejected this claim at trial because it said that the evidence presented did not substantiate any constitutional claims. *See* 547 F.Supp. at 1173 n. 5.

■ The appellants argue, initially, that the appellee's failure to appeal from the district court's denial of his equal protection claim bars him from seeking affirmance of the judgment on this ground. They note the rule that an appellee may not attempt to enlarge the relief granted to him by the lower court unless he has cross-appealed from the denial of that relief. *See, e.g., United States v. American Railway Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087 (1924).

Here, however, the appellee is not seeking to enlarge the relief already granted

him. Rather, he is urging us to affirm the district court on grounds that the court chose to reject. This is proper. "[T]he appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court . . . ." *Id.; accord, Brown v. Marquette Savings & Loan Association,* 686 F.2d 608, 611 (7th Cir.1982).

The appellee contends that because *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), established that the Equal Protection Clause may be the basis for an action alleging unlawful sexual discrimination in employment,[1] he may rely upon that clause in an action for unlawful sexual harassment as well. In *Davis,* the Supreme Court held that "[t]he equal protection component of the Due Process Clause . . . confers on petitioner a federal constitutional right to be free from gender discrimination" if that discrimination cannot be shown to serve important governmental objectives and is not substantially related to achievement of those objectives. 442 U.S. at 234–35, 99 S.Ct. at 2271.

■ A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual. "[T]he decisionmaker [must have] selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects *upon an identifiable group.*" *Personnel Administrator v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) (footnote omitted) (emphasis added). In *Davis v. Passman,* for example, the male defendant had stated in a letter to the female plaintiff that he would employ only a man in a certain position, and thus treated the plaintiff differently from male employees solely because she was a woman.

■ The appellee argues that the relevant group or classification is men and that

1. *Davis* actually involved an equal protection claim made under the Fifth Amendment, but the same principle would apply to claims made under the Fourteenth Amendment.

Rader would not have discriminated against him if he were not a man. We are not convinced, however, that Rader discriminated against Huebschen as a man rather than merely as an individual. We are persuaded that the evidence, even when viewed most favorably to the appellee, establishes that Huebschen's gender was merely coincidental to Rader's action.

When the consensual romance between Huebschen and Rader ended in November 1979, Rader did indeed react spitefully towards Huebschen by recommending that he be demoted at the end of the probationary period. But Rader's motivation in doing so was not that Huebschen was male, but that he was a former lover who had jilted her. Furthermore, we note that there is no evidence that Rader discriminated against other men in the office or that she attempted to have romances with other men in the office.

Thus the proper classification, if there was one at all, was the group of persons with whom Rader had or sought to have a romantic affair. It was this group, of which Huebschen may have been the only one, that Rader sought to disadvantage. As unfair as Rader's treatment of Huebschen may have been, we simply are not persuaded that the Equal Protection Clause should protect such a class.

We note, finally, that the case is completely unlike *Woerner v. Brzeczek,* 519 F.Supp. 517 (E.D.Ill.1981), a case relied upon by the appellee to support the proposition that sexual harassment can be the basis of an action under the Equal Protection Clause. In that case, the district court held that the sexual harassment, consisting of embarrassing and belittling remarks to the plaintiff female police officer, sexual advances made to her by a male defendant, and harassment of male officers seeking to work with her, "were directed at [the plaintiff] because she is a woman." *Id.* at 518. *Woerner* presented a classic case of sexual harassment, one in which it was obvious that the harassment was directed solely at the plaintiff because she was a woman.

Accordingly, we hold that the district court properly rejected the appellee's equal protection claim.

### C. DHSS and the Title VII Claim

The appellants challenge the district court's holding that DHSS stipulated to Title VII liability. *See* 547 F.Supp. at 1179. At oral argument, the appellee virtually conceded that the court had erred in so holding.

A review of the record leads us to the conclusion that the district court did err in holding that DHSS stipulated to liability. What the agency did stipulate to was the form of a job tender and the amount of backpay, in the event that it was held liable under Title VII. Accordingly, we reverse the judgment of the district court as to the liability of DHSS under Title VII.

### CONCLUSION

We reverse the judgment of the district court with respect to appellant Jacquelyn Rader and direct the court to enter judgment in her favor. We also reverse the judgment that the Department of Health and Social Services had stipulated to Title VII liability and remand that portion of the case to the district court for further proceedings. The costs of this appeal shall be borne by the appellee.