**Elizabeth GOBLA, Plaintiff,**

v.

**CRESTWOOD SCHOOL DISTRICT, et al., Defendants.**

Civ. No. 82–0699.

United States District Court, M.D. Pennsylvania.

Feb. 1, 1985.

Francis G. Wenzel, Jr., Ralph E. Kates, III, Griffith, Aponick & Musto, Wilkes-Barre, Pa., for plaintiff.

Harry P. Mattern, Joseph B. Farrell, Wilkes-Barre, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

This action was originally filed by the plaintiff on June 4, 1982, in which she alleged violations of 42 U.S.C. §§ 1983, 1985 and the Pennsylvania Equal Rights Amendment pursuant to her discharge as a school teacher from the Crestwood School District. The plaintiff's dismissal hearing was held before the Crestwood School Board on October 3 and 9, 1978 in which she was charged with thirty-five counts of insubordination. On November 2, 1978 she was formally discharged for having violated the school laws of the Commonwealth of Pennsylvania. The Secretary of Education sustained the dismissal and, in the process, made thirty-two findings of fact, twenty-three of which detail acts and omissions by the plaintiff which rise to the level of negligence and persistent and willful violation of the school laws. The plaintiff then appealed her dismissal to the Commonwealth Court of Pennsylvania alleging that, because of some of the incidents charged in the October 1978 dismissal proceedings occurred prior to an earlier March 1978 suspension hearing, those incidents could not form part of the basis for her dismissal. These items, she contended, constituted unlawful double punishment for the same conduct. The Commonwealth Court concluded, however, that the Order of the Secretary of Education must be affirmed absent findings of violation of constitutional rights, abuse of discretion, error of law, or unsupported findings of fact. The plaintiff then filed the present action here, alleging different reasons for her discharge, i.e., constitutional and federal statutory violations. In this action the plaintiff suggests that the reasons given for her dismissal in the administrative hearings were pretextual and that the real reasons contravene her rights under the Equal Protection Clause and the First Amendment of the United States Constitution.

On February 2, 1984, the defendants filed a Motion for Summary Judgment and brief in support thereof alleging the plaintiff has not stated constitutionally cognizable claims against the defendants. The plaintiff filed an Opposition Brief dated February 10, 1984 and the defendants filed a Reply Brief on February 24, 1984. After consideration of the defendants' motion, the court permitted both parties to file supplemental briefs. The defendants filed their supplemental brief on August 30, 1984 and plaintiff filed her supplemental brief on October 1, 1984. After a subsequent conference in Chambers with all parties, the motion is now ripe for disposition. The motion will be denied for the reasons set forth below.

There are basically three broad issues the court will address: (1) the First Amendment issue—whether the "outspokenness," which plaintiff claims led to her discharge, is protected speech and is actionable; (2) the equal protection issue—whether § 1983 can be the basis for a sexual harassment/sexual discrimination claim; and (3) the conspiracy issue—whether Principal Theodore Geffert, Superintendent William Smodic and Assistant Principal Mary Redgate conspired to do something "illegal." Preliminarily, a review of plaintiff's complaint, Document No. 1 of the Record, indicates that she alleges she was exercising her constitutional rights of free speech and assembly in order to evaluate the ability, competency and experience of the Crestwood School Board, its members and other defendants, when she was terminated. She also maintains that defendants considered her to be an opinion leader within the union. As a result of exercising her rights, plaintiff contends she was arbitrarily terminated and that the defendants' actions were taken in bad faith by a plan to discredit her. The plan purportedly included filing false charges, securing false statements from alleged witnesses, harassment and a denial of due process. The complaint

itself makes no mention of sexual harassment or sexual discrimination.[1] Plaintiff also asserts she did not become aware a conspiracy existed until the deposition of Mary Redgate was taken subsequent to the commencement of this action.

### FIRST AMENDMENT ISSUE

The leading Supreme Court case in the First Amendment area is *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). As a general rule, citizens do not relinquish all of their First Amendment rights when they become public employees. *Id.* However, the state "has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Id.* at 568, 88 S.Ct. at 1734. Accordingly, courts must "arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interests of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* A school board may not dismiss an employee for criticizing school policies that are of public interest unless the speech contains knowingly or recklessly false statements, undermines the ability of a teacher to function, or interferes with the operation of the school. *Id.* at 568–72, 88 S.Ct. at 1734–37. *See also McGee v. South Pemiscot School District*, 712 F.2d 339, 342 (8th Cir.1983); *Czurlanis v. Albanese*, 721 F.2d 98, 102 (3d Cir.1983); *Monsanto v. Quinn*, 674 F.2d 990, 993 (3d Cir.1982).

In *Trotman v. Board of Trustees*, 635 F.2d 216, 224–25 (3d Cir.1980), *cert. denied*, 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 844 (1981), the Court of Appeals reviewed the three step process usually required in examining a public employee's claim of retaliation for engaging in protected activity. *See also Monsanto v. Quinn, supra;* and *Czurlanis v. Albanese, supra.* First, the plaintiff must show that the ac-tivity in question was protected. *See Pickering v. Board of Education, supra.* If successful in demonstrating that the activity was protected, the plaintiff must then show that the activity was a substantial or motivating factor in the decision or action taken against her. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Lastly, the defendant has the opportunity to defeat the plaintiff's claim by demonstrating that the same action would have been taken even in the absence of the protected conduct. *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 416–17, 99 S.Ct. 693, 697–98, 58 L.Ed.2d 619 (1979); *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. at 287, 97 S.Ct. at 576.

Initially, in determining whether a motion for summary judgment by the defendant is meritorious, the court must begin with an inquiry of whether Mrs. Gobla's speech was protected. To decide that issue, we must first ascertain whether the speech dealt with a matter of public concern. In *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983), the Supreme Court held that where public employee's activity "cannot be fairly characterized as constituting speech on a matter of public concern," it is unnecessary for the court to scrutinize the reasons for the plaintiff's discharge or the disciplinary action. The Court continued, "[w]hen employee expression cannot be fairly considered as relating to any matter of political, social or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Id.* Accordingly, the Court in *Connick* made an essential distinction between speech by a public employee "as a citizen upon matters of public concern" and speech by an employee "upon matters of only personal interest." *Id.* at 147, 103 S.Ct. at 1690. Only when an employee speaks upon a

---

**1.** While the plaintiff does not allege sexual harassment in her complaint, the defendants have been adequately apprised of this claim during pretrial proceedings.

matter of public concern is a federal court the appropriate forum "in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record." *Id.* at 147–48, 103 S.Ct. at 1690–91.

In the case *sub judice,* we must examine each of Mrs. Gobla's allegedly protected statements to determine whether any or all of them are protected, as defined by the Court in *Connick.* Mrs. Gobla appears to argue that due to her "outspokenness" a campaign developed by the defendants Geffert and Smodick to insure her eventual discharge. She alleges she went to the Superintendent to discuss possible kickbacks to Mr. Geffert with regard to school ring purchases.[2] Also, that she argued with the administration over the proper course for a rape victim's rehabilitation, and that she was open and defiant as to school policies which she did not support. Finally, that newspaper articles were published by local papers in which she openly disagreed with school policies.

It appears that while some of Mrs. Gobla's allegations involve merely employee grievances, she alleges at least two matters which are arguably matters of public importance, *i.e.,* purported kickbacks on the sale of class rings and the newspaper articles in which she aired several grievances. The other issues raised by Mrs. Gobla are clearly in the same vein as those raised in *Connick* and constitute unprotected speech. In *Connick,* the plaintiff, a former assistant district attorney unhappy about a transfer, contended she was dismissed for compiling and distributing a questionnaire to her coworkers concerning office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors and whether employees felt pressure to work in political campaigns. With the exception of the last

issue, the court held the questions posed by the plaintiff did not fall within the realm of matters of public concern. 461 U.S. at 148, 103 S.Ct. at 1690. The court further explained:

> [Plaintiff] did not seek to inform the public that the district attorney's office was not discharging its governmental responsibilities in the investigation and prosecution of criminal cases. Nor did [she] seek to bring to light actual or potential wrongdoing or breach of public trust on the part of the [district attorney] and others.... The questions reflect one employee's dissatisfaction with the transfer and an attempt to turn that displeasure into a cause celebre.

*Id.*

Unlike *Connick,* the plaintiff in *Czurlanis, supra,* alleging he was suspended in retaliation for making a speech at a county board meeting, was found to have a protected First Amendment right. 721 F.2d at 107. Czurlanis, a senior mechanic at the Westfield Garage, addressed the board on precisely the questions which the Court in *Connick* noted were not the subject of plaintiff's speech there, *i.e.,* whether county officials in the Division of Motor Vehicles were discharging their governmental responsibilities. *Id.* at 104. He sought to bring to light actual or potential wrongdoings or breach of public trust on the part of these officials. Czurlanis spoke as a concerned citizen and taxpayer and not as an aggrieved employee. The Court of Appeals explained that "[t]he fact that Czurlanis became aware of the matters which he raised at the board meeting through his employment with the county does not make these matters any less issues of public concern." *Id.* Therefore, they determined the speech in question approximated that in *Pickering.*

After determining the speech at issue relates to a matter of public concern we must also conduct the balancing as explained in *Pickering.* Among the factors considered relevant in determining whether

---

**2.** Of course, the assertion of kickbacks is merely an allegation at this stage of the proceedings.

The court does not intend to create the impression that it is true.

the speech related to an important public matter the Supreme Court in *Pickering* noted:

> The question whether a school system requires additional funds is a matter of legitimate public concern.... On such a question free and open debate is vital to informed decision-making by the electorate. Teachers are, as a class, the members of the community most likely to have informed and definite opinions as to how funds allocated to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal.

391 U.S. at 571–72, 88 S.Ct. at 1736. However, in considering whether the impact of the speech was unacceptably disruptive, the Court looked to the following factors: (1) whether the speech interfered with the maintenance of "either discipline by immediate superiors or harmony among coworkers," *id.* at 570, 88 S.Ct. at 1735; (2) whether the speech was critical of superiors with whom the speaker maintained "the kind of working relationship for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning," *id.;* (3) whether the speech impeded the employee's proper performance of his duties, *id.* at 572, 88 S.Ct. at 1736 and (4) whether the speech interfered with the regular operation of the office generally, *id.* at 573, 88 S.Ct. at 1737. *See also Monsanto v. Quinn,* 674 F.2d at 997, (the Third Circuit Court of Appeals determined that "a holding that a public employee's comments about the operation of a department with which s/he is intimately familiar are not protected speech would inhibit and discourage divulgence of information which elected officials, the press and the public need to uncover and eliminate waste and inefficiency."); *Trotman v. Board of Trustees,* 635 F.2d at 230, (the Third Circuit Court of Appeals looked to whether there had been material and substantial disruption and stated that in an academic environment, a restraint on "protected activity can be sustained only upon a showing that such activity would 'material-

ly and substantially interfere with the requirement of appropriate discipline in the operation of the school.' ").

In Mrs. Gobla's situation, the defendants do argue that the plaintiff's "insubordination" and defiance of the rules resulted in destruction of the working relationship necessary between a teacher and principal. However, it appears that Mrs. Gobla's statements of fraudulent kickbacks being received by Mr. Geffert is a matter of substantial public interest. Additionally, Mrs. Gobla's allegations in the two newspaper articles of March 15 and 16 of 1978 charging the district with "misusing students, with failing to attend to important matters and with mounting a long-term campaign of harassment against her because, in her words, 'they want my job' " are also matters which balance in favor of tipping the scales in favor of protected speech. Therefore, at least those activities could not permissibly furnish the basis for a retaliatory discharge.

The second step of the three step process must be an evaluation of whether the protected activity was a substantial or motivating factor in the school board's decision to discharge the plaintiff. *See Mt. Healthy City School District Board of Education, supra.* The Supreme Court in *Mt. Healthy* explained:

> The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct. A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.

429 U.S. at 285–86, 97 S.Ct. at 575–576. *See also Monsanto,* 674 F.2d at 999–1000. The plaintiff clearly asserts, through affi-

davits and other exhibits, that she was discharged at least to a large extent because of her "outspokenness." Therefore, she has satisfied the second step of the analysis for summary judgment purposes.

 Pursuant to the last step in the analysis, the defendants have argued that Mrs. Gobla's discharge on the grounds of insubordination would have taken place even in the absence of any protected conduct. The record reveals that the reason given for plaintiff's termination was a long series of violations of the school rules. The plaintiff, on the other hand, argues that it was simply because of her "outspokenness" that she was discharged; that other teachers who had engaged in a substantial number of the same minor violations of the rules as she were not dealt with in the same manner. Consequently, a dispute appears to exist as to whether plaintiff, in fact, would have been terminated regardless of any constitutionally sheltered conduct. Since the resolution of the First Amendment issue depends upon a multitude of disputed facts, some of which may or may not be deemed relevant as the trial progresses, a motion for summary judgment on the question of protected speech cannot be granted.

## SEXUAL HARASSMENT–SEXUAL DISCRIMINATION

Plaintiff also alleges that she was sexually harassed and/or discriminated against by Defendant-Principal Geffert. This began in December, 1973, according to plaintiff and continued at least until October of 1977. Principal Geffert flatly denies the comments that plaintiff alleges were made. Nevertheless, plaintiff persists in her claim that she may pursue a remedy pursuant to 42 U.S.C. § 1983.[3]

 Section 1983 does not provide a plaintiff with a substantive right but instead provides a remedy through which a plaintiff may vindicate alleged violations or deprivations of constitutional rights. It is well settled that claims of sex discrimination are cognizable under the Equal Protection Clause.[4] *See Woerner v. Brzeczek*, 519 F.Supp. 517, 519 (E.D.Ill.1981) (citing *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971)). Further, "an equal protection claim arises when an individual contends that he [or she] is receiving different treatment from that received by other individuals similarly situated." *Skadegaard v. Farrell*, 578 F.Supp. 1209, 1215 (D.N.J.1984). The defendants cite *Huebschen v. Department of Health and Social Services*, 716 F.2d 1167 (7th Cir.1983), for the proposition that plaintiff's cause of action is not cognizable under § 1983. In *Huebschen*, the court stated that "a person bringing an action under the Equal Protection Clause must show intentional discrimination because of the membership in a particular class and not merely because he or she was treated unfairly as an individual." The *Huebschen* court was faced with a factual issue involving a male plaintiff who brought an action to recover damages for alleged sexual harassment perpetrated by his female supervisor in the course of his employment. The plaintiff argued that the relevant group or classification was male and that his supervisor would not have discriminated against him had he not been male. The reviewing court, however, stated that even when viewing the evidence produced at trial in the light most favorable to the plaintiff, the plaintiff's gender was merely coincidental to the supervisor's action. The court found that when the affair between the plaintiff and the supervisor had ended, the supervisor did react spitefully and recommended that plaintiff be demoted. But the court found that the motivation of the supervisor in recommending demotion was not because plaintiff was a male, but rather was because he was a former lover who had jilted her. "Thus the proper classification, if there was one at all, was the group of persons with whom

---

**3.** The lateness of these assertions may, as defendants contend, cast doubt upon their validity but this is more appropriately for the fact-finders to weigh and evaluate.

**4.** The court assumes that plaintiff is advancing an Equal Protection claim.

[the supervisor] had or sought to have a romantic affair." *Huebschen, supra,* at 1172. The *Huebschen* Court distinguished *Woerner v. Brzeczek,* 519 F.Supp. 517, 519 (E.D.Ill.1981) because *Woerner* presented a classic case of sexual harassment.

In *Woerner,* a plaintiff-female police officer complained of sexual harassment consisting of embarrassing and belittling remarks made to her by the male defendant and other male officers. Because the plaintiff in *Woerner* had alleged a long and pervasive course of conduct that clearly constituted discrimination on the basis of sex, the court decided that it need not face the issue of whether individual actions such as the use of language like "that broad" might state a federally cognizable claim.[5]

In *Skadegaard, supra,* a female state agency employee brought an action based on the Fourteenth Amendment claiming sexual harassment and retaliatory conspiracy for rebuffing her supervisor's advances. After stating that an equal protection claim arose when an individual contends he or she was treated differently from others similarly situated, the court held plaintiff had stated a claim for relief by alleging she was intentionally treated differently from the male employees because of her sex.

■ Plaintiff Gobla has alleged a long and pervasive course of conduct which, if believed, may constitute discrimination on the basis of sex. *See* Document No. 122 of the Record. Examining the factual allegations of plaintiff and based upon *Woerner, supra,* and *Skadegaard, supra,* it cannot be determined that plaintiff, as a matter of law, is not entitled to any relief under § 1983 premised upon the Equal Protection Clause. The court believes that *Woerner* and *Skadegaard* are more analogous to the instant set of facts than *Huebschen* upon which defendants rely and the court is persuaded by the analysis in those cases.

In conclusion, plaintiff's § 1983 Equal Protection claim may not be dismissed because the statements that plaintiff alleges were made to her and are denied by defendant, are factual issues, incapable of resolution on this motion for summary judgment. ·

## CONSPIRACY

Section 1985(3) provides, *inter alia,* that a person injured as a result of a conspiracy to deprive him of equal protection of, and equal privileges under, the laws, may have an action for damages against any one or more of the conspirators. Similar to § 1983, § 1985(3) does not create rights but is a remedial statute. In order to state a cause of action under § 1985(3), plaintiff must assert that defendants:

(1) conspired

(2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws

(3) that the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy and that

(4) plaintiff was

(a) injured in his person or property or

(b) deprived of having and exercising any right or privilege of a citizen of the United States.

*Great American Fed. Savings & Loan Assoc. v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971)).

■ Discriminatory conspiracies motivated by a sex-based animus are within the

---

5. The *Woerner* court noted that a lower threshold of discriminatory activity was necessary to state a cause of action under the Equal Protection Clause than would be required under Title VII. The court stated: "In *Bundy v. Jackson,* the Supreme Court had difficulty in determining whether sexual harassment that did not deprive a plaintiff of a tangible employment benefit constituted a violation under Title VII, mainly because Title VII makes unlawful only employment practices relating to 'terms, conditions or privileges of employment. . . .' But the Equal Protection Clause has no such limitation." *Id.* at 520 n. 5.

**980**

scope of § 1985(3). *Skadegaard v. Farrell,* 578 F.Supp. 1209, 1218 (1984). Our Court of Appeals stated in *Novotny,*[6] 584 F.2d at 1243:

> The fact that a person bears no responsibility for gender, combined with the pervasive discrimination practiced against women, and the emerging rejection of sexual stereotyping as incompatible with our ideals of equality convince us that whatever the outer boundaries of the concept, an animus directed against women includes the elements of a 'class-based invidiously discriminatory' motivation.

■ It is not necessary for plaintiff to allege all women were discriminated against, she need only show that she is a member of a discernable class within the remedial framework of § 1985(3) and that the animus giving rise to the conspiracy was based upon plaintiff's membership in that group. *Skadegaard, supra* at 1220. While plaintiff must ultimately prove defendants were motivated by the "class-based invidiously discriminatory animus" rather than by a personal vendetta or attraction, *id.,* she is entitled to the opportunity to establish this at trial.

■ Plaintiff alleges that Defendant-Principal Geffert in concert with other defendants conspired to effect plaintiff's discharge. The conspiracy was motivated, according to plaintiff, because, *inter alia,* she would not accept Defendant Geffert's "sexual insults to herself or her students...." Document No. 122 of the Record. Whether sexual comments were made, and as a result, a conspiracy arose to effectuate plaintiff's discharge is a factual issue yet to be decided. Thus, the court cannot conclude, upon a motion for summary judgment, that defendant is entitled to judgment as a matter of law.

An appropriate Order will enter.

6. While the decision was reversed by the Supreme Court, the Third Circuit's discussion of the scope of § 1985(3) is considered good law.

*Skadegaard, supra,* at 1218–19 (citations omitted).