**Hattie M. TRIGG, Plaintiff-Appellant,**

v.

**FORT WAYNE COMMUNITY
SCHOOLS,
Defendant-Appellee.**

**No. 84–1942.**

United States Court of Appeals,
Seventh Circuit.

Argued April 25, 1985.

Decided June 25, 1985.

W. Paul Helmke, Jr., Helmke, Beams, Boyer & Wagner, Ft. Wayne, Ind., for plaintiff-appellant.

James P. Fenton, Barrett, Barrett & McNagny, Ft. Wayne, Ind., for defendant-appellee.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and GRAY, Senior District Judge.[*]

GRAY, Senior District Judge.

This is an appeal from the summary judgment granted by the district court to defendant Fort Wayne Community Schools on appellant's claim, under 42 U.S.C. § 1983, for alleged racial and sexual discrimination in her employment. We reverse.

The appellee discharged the appellant from her position as "liaison aide" at the appellee's "opportunity school" located in Fort Wayne, Indiana, assertedly because of her insubordination and her excessive tardiness or absenteeism. The appellant contends that she was discharged because her supervisor "did not like to work with black women," and that she had been subjected to harassment on account of her race and sex.

The district court held that Ms. Trigg's complaint clearly stated a claim for employment discrimination, for which the remedy is found in Title VII, 42 U.S.C. § 2000e *et seq.*, and that she was bound by Title VII's administrative exhaustion requirements, including the filing of a charge of discrimination with the EEOC and the receipt of notice of a right to sue in federal court. The plaintiff had not accomplished these exhaustion requirements in pursuing her § 1983 claim, and the district court accordingly granted summary judgment against her.

The appellant contends that as a state government employee, she can base her § 1983 claim on the alleged violations of her Fourteenth Amendment right to equal protection, irrespective of whether the appellee's conduct also violated Title VII. The appellee asserts that the appellant's Fourteenth Amendment rights are not independent of the rights provided her under Title VII, and that Congress intended Title VII to preempt § 1983 in the area of public employment discrimination.

■ Title VII prohibits employment discrimination based on race or sex. The Fourteenth Amendment's Equal Protection Clause prohibits intentional discrimination based on membership in a particular class, *see Huebschen v. Department of Health and Social Services*, 716 F.2d 1167, 1171 (7th Cir.1983), including acts of employment discrimination. *Cf. Davis v. Passman*, 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271–72, 60 L.Ed.2d 846 (1979)(The Fifth Amendment prohibits invidious sexual discrimination).[1] Title 42 U.S.C. § 1983 does not by itself confer substantive rights, *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 618, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979). To bring an action under § 1983, a plaintiff must cite a deprivation of rights, privileges, or immunities "secured by the Constitution and laws." *Huebschen*, 716 F.2d at 1170. The appellant contends that the substantive basis of her § 1983 action is the appellee's violation of the Fourteenth Amendment's Equal Protection Clause.[2]

The appellee contends that § 2 of the Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, 86 Stat. 103, which extended the protection of Title VII to state and local government employees, was intended to make Title VII the exclusive remedy for public sector employment

---

[*] Honorable William P. Gray, Senior United States District Judge, Central District of California, sitting by designation.

1. The Fifth Amendment analysis in *Davis v. Passman* applies to claims made under the Fourteenth Amendment Equal Protection Clause. *Huebschen*, 716 F.2d at 1171 n. 1.

2. Contrary to the appellee's assertions, the appellant does not assert that the substantive basis of her § 1983 action is Title VII. (See Appellee Brief, page 3.)

discrimination. For that proposition, the appellee cites *Brown v. GSA,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) and *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). *Brown,* however, discussed § 11of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16, which extended Title VII protection to federal employees. The Court made it clear that Congress had been persuaded that federal employees had no effective judicial remedy for employment discrimination, and it inferred from Congress's silence that the congressional intent was to create an exclusive federal remedy to redress federal employment discrimination. *Brown,* 425 U.S. at 827–29, 96 S.Ct. at 1965–66. By contrast, the legislative history of § 2 of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e, clearly indicates that § 2 was not intended to displace the existing § 1983 remedy for Fourteenth Amendment violations for *state* employees. H.R.Rep. 92–238, *reprinted in* 1972 U.S.Code Cong. & Ad.News 2137, 2154.[3] The Sixth Circuit recently inferred from this Report that the rights of state government employees to sue under § 1983 for violations of their Constitutional rights were left intact. *Day v. Wayne County Board of Auditors,* 749 F.2d 1199, 1204 (6th Cir.1984). *See also Novotny,* 442 U.S.

at 377 n. 21, 99 S.Ct. at 2351 n. 21 (majority opinion) and 395 n. 19, 99 S.Ct. at 2361 n. 19 (White, J., dissenting).

*Novotny* considered whether a person injured by a conspiracy to violate § 704(a) of Title VII can sue under § 1985(3). Mr. Novotny claimed that he was discharged for supporting the rights of female employees. The Court held that if a plaintiff could assert a Title VII action through § 1985(3), he could "... completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII." *Id.* at 376, 99 S.Ct. at 2351.

The critical distinction is that *Novotny* involved private discrimination, while this appeal involves alleged discrimination by a state employer. Mr. Novotny could not assert two independent rights, because although Title VII conferred rights to the plaintiff, § 1985(3), a purely remedial statute, did not. *Id.* at 376–78, 99 S.Ct. at 2351–52.[4] A state government employee has rights conferred by Title VII; such employee also has rights conferred by the Fourteenth Amendment because of the state action. Importantly, two Justices in the *Novotny* majority wrote separately to suggest that Mr. Novotny's employment discrimination claim based on § 1985(3) would have been legally sufficient if he

**3.** The House Report stated:
  In establishing the applicability of Title VII to State and local employees, the Committee wishes to emphasize that the individual's right to file a civil action in his own behalf, pursuant to the Civil Rights Act of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983, is in no way affected.... Title VII was envisioned as an independent statutory authority meant to provide an aggrieved individual with an additional remedy to redress employment discrimination.... The bill, therefore, by extending jurisdiction to State and local government employees does not affect existing rights that such individuals have already been granted by previous legislation.
  H.R.Rep. No. 92–238, *reprinted in* 1972 U.S.Code Cong. & Ad.News 2137, 2154. The managers of the House and Senate Conference Committee submitted a joint statement to explain the Committee's actions. It stated: "The House bill pro-

vided that charges under Title VII are the exclusive remedy for unlawful employment practices. The House receded." *Joint Explanatory Statement of Managers at the Conference on H.R. 1746 to Further Promote Equal Employment Opportunities for American Workers, reprinted in* 1972 U.S.Code Cong. & Ad.News 2179, 2181–82. *See also* Sape & Hart, *Title VII Reconsidered: The Equal Employment Opportunity Act of 1972,* 40 Geo.Wash.L.Rev. 824, 845, 849 (1972) (Title VII is an alternative remedy for state employees to § 1983 actions implicating the Fourteenth Amendment).

**4.** Fourteenth Amendment protection was not available to Mr. Novotny because the defendant was a *private* employer. *See Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948) (The Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful.")

could have asserted *Constitutional* violations. *See id.* at 379–81, 99 S.Ct. at 2352–54 (Powell, J., concurring) and 383–8599 S.Ct. at 2354–56 (Stevens, J., concurring).

The Court further noted that Mr. Novotny's asserted right under Title VII, 42 U.S.C. § 2000e–3, "did not even arguably exist before the passage of Title VII," *id.* at 376–77, 99 S.Ct. at 2351–52, and so Title VII could not have impliedly repealed any previously existing rights. By contrast, as discussed *supra,* a discharged state employee's right to sue under § 1983 for violations of the Equal Protection Clause was well established before the passage of Title VII, and the legislative history suggests that Congress intended that § 1983 would not be impliedly repealed in the employment discrimination context.

From the foregoing discussion, we conclude that the Fourteenth Amendment and Title VII have granted public sector employees independent rights to be free of employment discrimination. A plaintiff may sue her state government employer for violations of the Fourteenth Amendment through § 1983 and escape Title VII's comprehensive remedial scheme, even if the same facts would suggest a violation of Title VII. This holding is consistent with the great weight of authority. *See Day v. Wayne County Board of Auditors,* 749 F.2d 1199, 1205 (6th Cir.1984); *Meyett v. Coleman,* 613 F.Supp. 39 (W.D.Wis.1985); *Storey v. Board of Regents,* 600 F.Supp. 838, 840 (W.D.Wis. 1985); *Zewde v. Elgin Community College,* 601 F.Supp. 1237, 1244–46 (N.D. Ill.1984); *Skadegaard v. Farrell,* 578 F. Supp. 1209, 1218 (D.N.J.1984); *Woerner v. Brzeczek,* 519 F.Supp. 517, 519 (N.D.Ill. 1981). *But see Torres v. Wisconsin Department of Health and Social Services,* 592 F.Supp. 922, 929–30 (E.D.Wis.1984).

Accordingly, the judgment of the district court is REVERSED and the case REMANDED for proceedings consistent with this opinion.