Susan **CAMPBELL**, Plaintiff,

v.

Jeffrey **MASTEN**, et al., Defendants.

**Civil No. K–96–2754.**

United States District Court,
D. Maryland.

March 11, 1997.

---

Roy L. Mason and Natasha Sethi Wesker, Baltimore, MD, for Plaintiff.

Stephen M. Silvestri and Mark T. Mixter, Baltimore, MD, and Richard A. DeTar, Easton, MD, for Defendants.

### MEMORANDUM AND ORDER

FRANK A. KAUFMAN, Senior District Judge.

(1) Reference is hereby made to Defendants' Motion to Dismiss or in the Alterna-

tive Motion for Summary Judgment with regard to plaintiff's Complaint and Amended Complaint. Defendants' motion with regard to plaintiff's original Complaint was filed on October 15, 1996, and defendants' motion with regard to plaintiff's Amended Complaint was filed on January 3, 1997. Plaintiff's Amended Complaint is substantially similar to her original Complaint with the singular addition of a state law cause of action for wrongful discharge.

Additionally, this Court has read and considered the plaintiff's Motion for Voluntary Dismissal of her state law claims, and the defendant's opposition to that motion.

For the reasons stated in this Memorandum and Order, this Court will grant the defendants' motion to dismiss each and all of plaintiff's federal claims, and will not exercise supplemental jurisdiction over the remaining state law claims of plaintiff. Consequently, this Courts grants the plaintiff's Motion for Voluntary Dismissal.

(2) Plaintiff, Susan Campbell ("Campbell") filed her original Complaint on September 9, 1996 in which she alleged both federal and state claims against Jeffery Masten ("Masten") and the Wildlife International, Ltd. ("Wildlife"), her former employer. In particular, plaintiff brings, in Counts One, Two and Three of her Complaint, claims of sex discrimination, quid pro quo sexual harassment, and hostile work environment discrimination, solely against Wildlife, and all based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). This Court's jurisdiction for this suit against Wildlife and Masten is based on those Title VII claims. Further, in Counts Four, Five, Six, Seven, Eight, and Nine, plaintiff alleges that both defendants participated in conduct that constitute the state law claims of intentional infliction of emotional distress, negligent selection, supervision and retention, false light, tortious interference with prospective advantage, wrongful discharge, and civil conspiracy respectively.

(3) The record in this case contains only one item other than pleadings, *i.e.,* the affidavit of Joann B. Beavers, Campbell's supervisor, offered by the defendants in connection with their defense of plaintiff's tortious inter-ference claim. Therefore, the Court will evaluate each of plaintiff's federal claims against the standards applicable to a motion to dismiss. When considering the merits of a motion to dismiss a complaint for failure to state a claim, the district court is required to treat all well-pleaded allegations as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). The district court should not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

This Court gave the plaintiff an opportunity to make a case for discovery in order to resist the defendants' motions. The plaintiff has declined to request discovery, and has requested that all of the state claims in this case be dismissed without prejudice. Accordingly, this Court will evaluate defendants' motions with regard to plaintiff's federal claims on the basis of the record in this case to date.

(4) Campbell was employed by Wildlife frown 1989 through July 5, 1995. Campbell worked first as a research biologist, and then as a study director until her termination. Campbell's manager at Wildlife was Joann Beavers ("Beavers"). It appears from the Complaint filed in this case, that Campbell entered a consensual sexual relationship with Masten in February of 1993, shortly after Masten began working at Wildlife as Director of Quality Assurance, in November of 1992. In March, 1993, Campbell received a $5,000 raise. Campbell alleges Masten claimed responsibility for that raise, had supervisory authority over her, and attached "unspoken expectations" to her receipt of this raise. (Am. Compl. ¶ 10.) Beavers, in her affidavit filed in this case, proffers that she was Campbell's supervisor from February, 1993 through her termination on July 5, 1995, and that she was solely responsible for supervising, and evaluating the performance of Campbell. (Beavers Aff. ¶ 3; *see also,* Am. Compl. ¶¶ 14–15.)

In July of 1993, Masten broke off the sexual relationship between Campbell and

himself, and became engaged to another woman. After the Masten–Campbell relationship came to an end, Campbell alleges Masten became critical of her work in front of her co-workers, and that his "criticism and ridicule made their way to Ms. Campbell's direct manager, Joann B. Beavers." (Am. Compl. ¶¶ 12, 14.) Campbell further asserts that she was asked to resign by Beavers due to a dispute regarding her performance, and subsequently fired by Mark Jaber and Curt Hutchinson, the co-owners of Wildlife. (Am. Compl. ¶¶ 15, 16.) Campbell asserts that her termination was causally connected to Masten's criticism, who was motivated to force her from Wildlife due to his fear that "his wife would find out that he had been sexually involved with Campbell at the time of their engagement." (Am. Compl. ¶ 17.)

■ (5) In order to advance a claim of sex/gender discrimination, separate and apart from plaintiff's sexual harassment claims, plaintiff must at least allege significant acts which, if proven, would demonstrate that the defendant, in this case Wildlife, treated her in a disparate fashion on the basis of gender. *Balazs v. Liebenthal,* 32 F.3d 151, 155 (4th Cir.1994). Title VII unequivocally prohibits "discrimina[tion] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's … sex." 42 U.S.C. § 2000e–2(a)(1). In this case, Campbell states no facts which if taken as true create a causal connection between her gender as such and any ill will demonstrated by her supervisors. Nowhere is it alleged that Campbell was treated differently than her co-workers, on the basis of gender.

Instead, Campbell argues she suffered ill treatment and was subsequently terminated because Masten perceived her as a threat to his marriage, and that due to Masten's close relationship with various members of Wildlife management, Wildlife management retaliated against Campbell for her involvement with Masten. She states, "[c]learly, she would not be perceived as such a threat had he not initiated an affair with her, and he would not have done that but for her gender as a female." (Pl.'s Opposition to Def's Mot. to Dismiss at 5.) This Court agrees that Mas-

ten's affair with Campbell, and subsequently, his apparent antipathy for her are indeed premised on the underlying fact that Campbell is a woman, given his apparent heterosexuality. Campbell's status as a woman, however, is only the foundation on which her Title VII claim, if valid, would proceed. From that foundation, Campbell must offer some allegation that the terms and conditions of her employment were affected because of her status as a woman, not simply as a result of personal incompatibility and petty grudges. In the absence of such a distinction, any workplace affected by consensual workplace romances gone sour, and the concomitant workplace politics, could spawn Title VII claims. *See Trautvetter v. Quick,* 916 F.2d 1140, 1151 (7th Cir.1990) (discussing an analogous claim).

In *Huebschen v. Dept. of Health and Social Services,* 716 F.2d 1167 (7th Cir.1983), Judge Pell, writing for the Seventh Circuit addressed similar issues. In that case a male employee alleged violations of the Equal Protection Clause and Title VII when a female supervisor with whom he had had a consensual sexual affair recommended that he be demoted after he ended the affair. In reviewing the implications of concluding that this conduct did not constitute discrimination, Judge Pell wrote:

> Rader's motivation in [recommending demotion] was not that Huebschen was male, but that he was a former lover who had jilted her. . . .
>
> Thus the proper classification, if there was one at all, was the group of persons with whom Rader had or sought to have a romantic affair. It was this group, of which Huebschen may have been the only one, that Rader sought to disadvantage. As unfair as Rader's treatment of Huebschen may have been, we simply are not persuaded that the Equal Protection Clause should protect such a class.

*Huebschen,* 716 F.2d at 1172.

Even if taken for its most narrow proposition, *Huebschen* indicates the following:

> [T]hat when an employer penalizes an employee after the termination of a consensual relationship, a presumption arises that the employer acted not on the basis of

gender, but on the basis of a failed interpersonal relationship—a presumption rebuttable only if the employee can demonstrate that the employer demanded further sexual relationships before taking the action he did.

Read in this way, *Huebschen* makes a great deal of sense. Title VII prohibits discrimination in the workplace. An employee has the right to work in an atmosphere free from sexual abuse, and to obtain the privileges and benefits of her employment without having to provide sexual favors to her employer. An employee who chooses to become involved in an intimate affair with her employer, however, removes an element of her employment relationship from the workplace, and in the realm of private affairs people do have the right to react to rejection, jealousy and other emotions which Title VII say have no place in the employment setting.

Such an employee, of course, always has the right to terminate the relationship and to again sever [her] private life from the workplace; when she does so, she has the right like any other worker, to be free from a sexually abusive environment, and to reject her employer's sexual advances without threat to punishment. Yet, she cannot then expect that her employer will feel the same as he did about her before and during their private relationship. Feelings will be hurt, egos damaged or bruised. The consequences are the result not of sexual discrimination, but of responses to an individual because of her former intimate place in her employer's life.

*Keppler v. Hinsdale Township High School Dist. 86,* 715 F.Supp. 862, 869 (N.D.Ill.1989) (discussing the interplay between a consensual affair and a *quid pro quo* sexual discrimination claim) (footnote omitted).

Though Campbell has alleged Masten was uncomfortable around her and overly critical of her work after their affair ended, she makes no claim that that situation was based on gender, rather than personal animosity. In addition, Campbell offers no causal connection between Beavers's (and/or Wildlife's) decision to terminate her, and her gender; nor does she allege that Beaver, Jaber, Hutchinson and Masten acted together to discriminate against Campbell on the basis of gender as such. Indeed, while Beavers's alleged friendship with Masten, and Masten's criticism of Campbell's work after their relationship ended, may have detrimentally affected Beavers's opinion of Campbell, it is hardly uncommon for a friend to demonstrate loyalty through a showing of allegiance and support after her friend ends a romantic relationship with another. While such behavior may cause divisiveness among co-workers as a result of blurring the line between one's private life and one's workplace, it does not add up to, or even approach, sex discrimination.

Accordingly, even assuming all of plaintiff's allegations are true, Campbell has put forth no set of allegations which could make out a colorable sex discrimination claim. Thus, as to Count One, defendants' motion to dismiss will be granted.

■ (6) Campbell's next federal claim, Count Two, consists of an allegation of *quid pro quo* sexual harassment. A cognizable claim of *quid pro quo* sexual harassment requires that the plaintiff assert "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature ... when (1) submission to such conduct is made explicitly or implicitly a term or condition of an individual's employment...." 29 C.F.R. § 1604.11(a). "The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 68, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986).

Plaintiff nowhere alleges in either her original or Amended Complaint that her sexual relationship with Masten was "unwelcome." Rather, Campbell concedes that the affair was consensual, and she concedes Masten was the party to end the relationship. Indeed, if there was a jilted lover amongst this pair, it was Campbell not Masten. Under those circumstances, there is no factual basis for this Court to infer that Masten's sexual relationship with Campbell became "unwelcome" based on Campbell's reference to "un-

spoken expectations" somehow communicated by Masten after the affair had progressed, without objection by Campbell, and well after she had received a raise. Finally, as discussed in the *Keppler* opinion, cited above, negative employment actions which follow on the heels of a consensual relationship gone sour do not constitute *quid pro quo* sexual harassment unless they are linked in some way to other or further "unwanted" sexual advances.

Thus, taking as true every allegation in Plaintiff's Complaint, plaintiff has not alleged all the elements of a cognizable claim for *quid pro quo* sexual harassment; therefore, defendants' motion to dismiss will be granted as to Count Two.

■ (7) Plaintiff's final Title VII claim, for hostile work environment, also fails. "To prove such a [hostile work environment] claim, the plaintiff must show that the conduct in question was unwelcome, that the harassment was based on sex, and that the harassment was sufficiently severe or pervasive to create an abusive working environment." *Swentek v. USAIR, Inc.*, 830 F.2d 552, 557 (4th Cir.1987). *See also Meritor Savings Bank*, 477 U.S. at 66, 106 S.Ct. at 2405. Campbell claims neither gender-based harassment—she alleges that her work was criticized and ridiculed by Masten because of his fears that his wife would learn of their past affair—nor verbal or physical conduct of sexual nature, and hence sets forth no colorable hostile work environment contention. Thus, defendants are entitled to the dismissal of Count Three.

(8) Further, the court declines to exercise its discretionary supplemental jurisdiction set forth in 28 U.S.C. § 1367(a) over the remaining state law claims. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." While this Court appears to have supplemental jurisdiction over the state law claims in this case, Congress has provided district courts with several discretionary

exceptions to their exercise of supplemental jurisdiction in 28 U.S.C. § 1367(c)—one of which this Court will exercise. Districts courts may decline supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also, Hardy v. Birmingham Board of Education*, 954 F.2d 1546, 1550 (11th Cir.1992) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)).

This Court believes the determination of the sufficiency of Campbell's state law claims is best left to the Maryland state courts, and accordingly, this Court declines herein to exercise supplemental jurisdiction over the state law claims. Furthermore, as no discovery has taken place in this case, this Court finds the interests of the defendants are not unduly prejudiced by plaintiff's Rule 41(a)(2) Motion for Voluntary Dismissal, and hence, hereby grants plaintiff's motion.

(9) Copies of this Memorandum and Order and of a separate Judgment Order of even date herewith are today being mailed to counsel of record.

### JUDGMENT ORDER

(1) Judgment is hereby entered for the defendants with regard to each of plaintiff's federal claims, Counts One, Two, and Three of plaintiff's Amended Complaint.

(2) Plaintiff's state law claims, Counts Four, Five, Six, Seven, Eight and Nine of her Amended Complaint, are hereby dismissed without prejudice. The Clerk of the Court is directed to close the Court File in this case.