**Glennys GUTIERREZ, Plaintiff,**

v.

**Dr. Avraham HENOCH and Angelo Gelpi, Defendants.**

No. 95 Civ. 3782(MP).

United States District Court,
S.D. New York.

March 24, 1998.

Michael R. Bressler, New York City, for Plaintiff.

Schneider, Harris & Harris, (Lisa Levinson, of counsel), Woodmere, NY, for Defendants.

## DECISION AND OPINION

MILTON POLLACK, Senior District Judge.

Plaintiff Glennys Gutierrez ("Gutierrez") brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., alleging that defendant Angelo Gelpi ("Gelpi") sexually harassed her and that defendant Dr. Avraharn Henoch ("Henoch") is liable for the alleged sexual harassment as Gelpi's employer. In addition, Gutierrez alleges, pursuant to Title VIII, that she was terminated by Henoch in retaliation to her complaints of sexual harassment.

The case was tried to the Court at a Bench trial at the express election of Gutierrez's

counsel in a Pre–Trial Order signed approximately one year before the date of the trial. Based on the evidence in the Record, this Court is convinced that Gutierrez's claims are without merit and that judgment should be rendered in favor of Henoch as to all claims asserted against him.

## I. Background

In or about March 1994, Gutierrez was hired by Henoch, a doctor in the general practice of medicine, to serve in his offices as a phlebotomist and medical assistant. Gutierrez is a foreign licensed physician, having graduated from medical school in the Dominican Republic and having become a licensed physician there. She is not licensed to practice medicine in this country. During the time of her employment, Henoch operated three small medical offices in the Bronx and Manhattan. He employed, in addition to Gutierrez, approximately five other medical assistants· (some of whom were licensed physician assistants), a few administrative employees and an industrial psychologist, whose function was to manage the organization of the offices.

Gutierrez alleges that, beginning on or about April 11, 1994 and intermediately thereafter until August 15, 1994, she was subjected to sexually harassing behavior by Gelpi, one of the licensed physician assistants working in Henoch's offices. Initially, according to Gutierrez, Gelpi asked her to take up chores which she rejected, saying that these chores were part of the scope of her employment. In consequence, Gutierrez asserts that she avoided contact with Gelpi and did not communicate with him for several weeks. Gutierrez contends that Gelpi then made unwelcome advances with sexual overtones; that when she rebuffed these unwelcome advances, Gelpi became abusive and threatening; and that he often made lewd gestures and comments towards her. She claims to have kept a diary, but nothing therein carries any notation that she complained to Henoch; indeed the first mention to Henoch of any misconduct of Gelpi was on August 15th, 1994. In a statement filed with the Equal Employment Opportunity Commission ("EEOC"), Gutierrez stated the following:

On August 15, ....I reported to the [160th street] office. [Gelpi] was there and ultimately we had another encounter. He used foul language and attempted to hit me. The above was witnessed by Laura, who is a secretary, and Bruna, a housekeeper. That same day, I went back to the 15 1st street office where [Henoch] was located and in the presence of [Ms. Ruth Tejada], told [Henoch] everything that [Gelpi] had been saying and doing to me since the beginning of my employment. I told [Henoch] that [Gelpi] had been sexually harassing me. [Henoch] said he need to speak with [Gelpi].

Henoch promptly made inquiries around the office and obtained mixed information. Suffice to say, Henoch concluded it might be best to separate the work hours of the two; she to work in the morning part time while Gelpi continued on his afternoon assignment. She was loath to accept that solution and Henoch offered to help her to obtain a job at previous place of employment, a large hospital, with his recommendation. She apparently thought this over and decided, on August 18th, to resign her employment and go elsewhere. Henoch offered to give her severance pay so it would not seem that she was at fault. She accepted either two or four weeks pay.

On October, 13 1994, Gutierrez filed a written complaint with the EEOC alleging sexual harassment and retaliation claims pursuant to Title VII. After conducting a hearing, in a determination dated February 6, 1995, the EEOC denied Gutierrez's claims and made the following significant findings:

There is no evidence to show that [Gutierrez] was subjected to a hostile work environment.

The evidence of record does not support [Gutierrez's] claim of sexual harassment. The investigation revealed that [Gutierrez] complained to [Henoch] with respect to sexual harassment by [Gelpi]. The record shows an internal investigation was conducted. [Gelpi] denied that he harassed [Gutierrez] and there was no corroborative evidence to substantiate her allegations,

nor was there any evidence that her alleged harasser subjected any other employees to sexual advances. [Gutierrez's] witnesses testified that quite often [Gutierrez] joked with [Gelpi] and they did not observe anything of a sexual nature between them.

The evidence does not support [Gutierrez's] contentions that she was retaliated against or discharged because of her allegations of sexual harassment. The evidence shows that prior to [Gutierrez's] complaint she was transferred to Henoch's facility where the alleged sexual harassment took place because of her inability to get along with her co-workers. As a result of her complaint against [Gelpi] she was transferred to another facility where she worked part time. The investigation revealed that [Gutierrez] left on her own volition. The record shows no employee was ever fired from [Henoch's] facilities.

On May 3, 1994, Gutierrez filed the instant Complaint against both Gelpi and Henoch in which she asserted claims pursuant to Title VII, of sexual harassment and retaliation. The claims asserted against defendant Gelpi were dismissed at trial at the close of Gutierrez's evidence on motion by the defendants and by consent of plaintiff's counsel. Decision on the motion to dismiss the claims against Henoch was reserved, the Court desiring to hear his version of the charges.

## II. The Trial

Gutierrez called five witnesses to the stand. Her mother, Hermina Matos, testified she once visited Henoch as a patient during the term of Gutierrez's employment, and that during that visit Henoch complimented Gutierrez's work performance. A second proposed witness Leonidas Padilla was called by the plaintiff, but was excused from the stand because she did not speak English. Another witness, Ms. Ana I. Richards, a hotel housekeeper and friend, testified that Gutierrez had communicated to her about her problems with Gelpi and that Gutierrez was frequently despondent during the period of Gelpi's alleged harassment; she knew nothing about and gave no testimony relevant to the workplace.

Gutierrez testified on her own behalf. Her testimony reiterated the allegations set forth in her formal pleading and accompanying legal brief; namely that she had been sexually harassed from mid-April 1994 until mid-August 1994 by Gelpi, who she alleged was her supervisor at the offices. Gutierrez conceded that she was comfortable working with Henoch, but that she did not convey any complaints to Henoch regarding Gelpi until August 15, 1994. In her testimony, and in her "diary," in which Gutierrez allegedly recorded Gelpi's misconduct as it occurred, Gutierrez claimed that Gelpi's sexually harassing behavior was frequently witnessed by, or related to, Ms. Ruth Tejada or Mr. Gustavo Guillamo, two of Gutierrez's co-workers. Judging from Gutierrez's demeanor and the manner of her testimony, her legally oriented recitation did not originate with her, but may have come from appropriation of the points made in the decided cases that she had learned about on the subject matter of sexual harassment and retaliation pursuant to Title VII.

Ms. Tejada was called to the stand as plaintiff's final witness, but failed to support Gutierrez's assertions. Ms. Tejada testified that she has been a longtime friend of Gutierrez and was a co-worker at Henoch's offices. According to Ms. Tejada, Gelpi did not have the status or power to hire, fire, promote, demote, or discipline any employee. She testified that she had observed Gelpi and Gutierrez "joking around," but she never saw Gelpi make an obscene gesture, never overheard Gelpi make offensive comments to Gutierrez, and that Gutierrez had never complained to her about alleged sexual advances by Gelpi. In addition, Ms. Tejada did not support any notion that Gutierrez appeared uneasy or nervous in Gelpi's company.

Mr. Guillamo testified as Henoch's first witness. Mr. Guillamo had been a former school mate of Gutierrez in medical school in the Dominican Republic and had known her for about 15 years. He testified that Gelpi did not have nor did he exercise the power to hire, fire, promote, demote, or discipline any employee in the medical offices. Mr. Guillamo denied having witnessed Gelpi's conduct complained of by Gutierrez and he said that

Gutierrez had not complained to him about alleged unwelcome sexual advances. He sometimes saw Gutierrez and Gelpi joking around and said that this joking appeared to be innocent. Finally, Mr. Guillamo refuted Gutierrez's allegations that Gelpi was outspoken about his supposed jealousy of Mr. Guillamo's friendship with Gutierrez.

Ana Marchese, an employee in the office, called by the defense, testified that Gelpi did not have any supervisory powers in the offices during his employment with Henoch and that Henoch maintained a comfortable working environment for the employees.

Dimars Vasquez, another employee in the medical office, also gave testimony on the defendant's side of the case. Ms. Vasquez confirmed the accuracy of testimony of other employees that Gelpi neither maintained that he had nor did he exercise any supervisory powers over others in the offices. Ms. Vasquez added that she herself had some difficulties with Gutierrez, and that Gutierrez had called her "low class." Gutierrez allegedly was condescending towards some of her peers because she was a licensed physician in her native country. This attitude, evidently, engendered frequent conflicts between Gutierrez and her co-workers. Further, Ms. Vasquez testified that Gelpi and Gutierrez used to make dirty jokes in Spanish and that others would laugh about them.

Laura Maza, an office manager employed by Henoch, testified, that Gelpi was not a supervisor nor did he make assignments of others during his employment with Henoch. She testified to a verbal altercation between Gelpi and Gutierrez on August 15, 1994, and that derogatory things had been said by both parties about each other, but denied that she had witnessed any improper conduct of Gelpi toward plaintiff.

Henoch testified on the defendant's side of the case. He appeared to be a credible, forthright witness. He made clear that he maintained a relaxed atmosphere in the offices and that he was physically accessible to his employees to listen and deal with any concerns that they might have, work related or otherwise. He expressed a policy to help his employees succeed and to better themselves in the profession. He frequent-

ly encouraged his employees to move up the professional ladder and become licensed physicians or licensed physician assistants.

Henoch testified that he had not learned of any difficulties—real or fancied—that Gutierrez was experiencing with Gelpi in the course of her employment in die medical offices until August 15, 1994. On that day an angry exchange had seemingly occurred between Gutierrez and Gelpi, and Gutierrez came to see Henoch at his office and conveyed the events surrounding this exchange to Henoch. He testified that Gutierrez said that Gelpi had used strong and bad language with her, even threatened her; and that she could not work with him. Henoch was surprised by Gutierrez's complaint, but he promptly undertook to get all the facts. He made immediate inquiries from which he determined that Gutierrez's accusations and their implications were overblown, and were not justified or serious or supported by others in the offices.

Nevertheless, on August 15, 1994, Henoch offered to help to alleviate any tension between the two employees and suggested that she might prefer part time morning employment in die office away from Gelpi. Gutierrez apparently was not amenable to that suggestion. Henoch testified that he further suggested to her that she might want to return to her previous phlebotomy job in a hospital environment and offered to furnish a suitable recommendation designed to aid her to be accepted in a large hospital facility with more spacious work areas than existed in his offices and less contact between the staff members. On August 18th, Gutierrez declined Henoch's offer and on August 18, 1994, told Henoch that she preferred to resign. Henoch accepted her decision and instructed that she be given a severance check for several weeks pay in order to leave her in a position to present herself for employment after leaving following the short stay with the doctor.

Henoch denied that plaintiff was dismissed involuntarily or as a retaliation for having accused Gelpi of offensive impropriety. Henoch acknowledged that he had indeed praised Gutierrez to Gutierrez's mother dur-

ing a routine visit by Gutierrez's mother as a patient, and that he had written a recommendation for Gutierrez when she conveyed to him her interest in obtaining her physician assistant license. Henoch testified that these gestures were made in order to help Gutierrez gain confidence in herself and were not reflective of Gutierrez's performance.

### III. Discussion

#### A. Sexual Harassment

Title VII prohibits discrimination on the basis of race and sex with respect to the "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1). It is now uncontroverted that this language "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment" and to forbid sexual harassment in the workplace. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotation marks omitted). A plaintiff seeking relief under Title VII for sexual harassment may proceed under two theories: 1) *quid pro quo* harassment; and/or 2) hostile work environment. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304–1305 (2d Cir.1995). Gutierrez pleads a sexual harassment claim under both theories; and the Court addresses each in turn.

#### 1. *Quid Pro Quo Sexual Harassment*

■ "[T]o establish a *prima facie* case of *quid pro quo* harassment, a plaintiff must present evidence that she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of her employment." *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir.1994); *see also* 29 C.F.R. § 1604.11(a)(2) (*quid pro quo* harassment occurs when "submission to or rejection [of unwelcome sexual] conduct by an individual is used as the basis for employment decisions affecting such individual."). Further, by its nature the plaintiff must demonstrate that she was denied an economic benefit "either because of gender or because a sexual advance was made by a *supervisor* and rejected by her." *Kotcher v. Rosa and*

*Sullivan Appliance Center, Inc.*, 957 F.2d 59, 62 (2d Cir.1992) (emphasis added). "Because the *quid pro quo* harasser, by definition, wields the employer's authority to alter the terms and conditions of employment—either actually or apparently—the law imposes strict liability on the employer for *quid pro quo* harassment." *Karibian*, 14 F.3d at 777.

■ As was found also by EEOC, Gutierrez failed to introduce any corroboration that Gelpi ever made any unwelcome sexual advances towards her or that she received threats or offers of rewards in connection with any of these alleged sexual advances. Ms. Tejada and Mr. Guillamo, both allegedly witnesses of Gelpi's misconduct and confidantes of Gutierrez, denied having seen Gelpi sexually harass the plaintiff or having heard complaints from Gutierrez to that effect.

Moreover, the evidence introduced at trial conclusively established that Gelpi was a co-worker of Gutierrez with neither real nor apparent supervisory authority. Gelpi, employed as a licensed physician assistant, did not have or exercise power to hire or fire an employee, to promote or demote an employee, to impose discipline upon an employee, or to affect an employee's fundamental duties or benefits. These enumerated powers were vested solely in Henoch, and there was no evidence to the contrary adduced.

#### 2. *Hostile Work Environment Sexual Harassment*

■ A plaintiff asserting a hostile work environment claim must prove "(1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir.1996) (quoting *Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 249 (2d Cir.1995)).

■ Under the first prong, "isolated remarks or occasional episodes of [verbal] harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with

a regularity that can reasonably be termed pervasive." *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 n. 5 (2d Cir.1995). The determination of whether this first prong has been satisfied consists of both an objective and subjective component. See Rivera v. Edenwald Contracting Co., 1996 WL 240003, *3 (S.D.N.Y.1996). The objective component requires conduct severe or pervasive enough to engender "an environment that a reasonable person would find hostile or abusive." *Harris v. Forklift Systems,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The subjective component requires that the victim of the sexual harassment "perceive the environment to be [hostile or] abusive." *Id.* Although this standard is not a "mathematically precise test" and requires an assessment of "all the circumstances," relevant factors include consideration of the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." *Id.* at 22–23. There was no proof other than plaintiff s uncorroborated claims to support any such conduct or interference.

The second prong—imputing the harasser's conduct to the employer—is contingent on the status of the harasser. "[A]n employer is liable for the discriminatorily abusive work environment created by a supervisor if the supervisor uses his actual or apparent authority to further the harassment, or if he was otherwise aided in accomplishing the harassment by the existence of the agency relationship" with the employer. *Karibian v. Columbia Univ.,* 14 F.3d 773, 780 (2d Cir.1994). However, when the harassment is attributable to a co-worker and not a supervisor, the employer will not be liable unless "the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Id.* at 780 (citations omitted).

The Record indicates that the disputes between Gutierrez and Gelpi at most were over job-related disagreements or personality conflicts, and that Gutierrez was not subjected to circumstances sufficiently severe or pervasive to alter the conditions of her work environment. Gutierrez failed to introduce credible evidence or any corroboration that there existed any seriously wrongful conduct, let alone conduct which was severe or pervasive enough so as to constitute "an environment that a reasonable person would find hostile or abusive."

Gutierrez also failed utterly to satisfy the second prong of a hostile environment claim—that the harasser's conduct is imputable to Henoch. As discussed above, Mr. Gelpi is properly characterized as Gutierrez's co-worker, not her supervisor. Under these circumstances, Henoch cannot be held liable unless Henoch "provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Karibian.* The Record is clear that Dr. Henoch ran a relatively small medical practice where he was physically present and accessible to his employees in reasonably modest sized and confined examining rooms and the atmosphere was such that his employees could feel comfortable in bringing and expressing their concerns to him. In addition, there was Mr. Samuel Grodsky, to whom employees were able to voice any problems they had about their working conditions; he was the industrial organization psychologist employed by Henoch. In light of the circumstances existing at Henoch's practice at the time, including, but not limited to, the size of the offices and the number of employees working in the offices, the system provided a reasonable avenue for complaint and was sufficiently adequate to forestall and expose any harassment or any other impropriety which might arise in the workplace.

It cannot be said that Henoch knew of the alleged harassment but ignored it. On August 15, 1994, over four months after Gelpi's allegedly sexually harassing behavior commenced, Gutierrez complained to Henoch that she was having difficulties in working with Gelpi and nothing came to Henoch's attention that could be said to have interfered with her work performance. Upon learning of Gutierrez's allegations, Henoch promptly conducted an internal inquiry and reasonably concluded that the problems she had with Gelpi to the extent she had disclosed them to Henoch were insubstantial as

found also by EEOC and could be corrected by a change of work hours. Three days later, Gutierrez voluntarily left the practice; she was not discharged.

### B. Retaliation

 In order to make out a *prima facie* case of retaliation, a plaintiff must show "by a preponderance of the evidence i) participation in a protected activity known to the defendant; ii) an employment action disadvantaging the plaintiff, and iii) a causal connection between the protected activity and the adverse employment action." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir. 1995).

If the plaintiff satisfies this burden, the defendant may rebut the *prima facie* case by "articulating a valid legitimate non-discriminatory reason for its actions." *Id.* (citations omitted). If the defendant meets its burden of production, the plaintiff has the opportunity "to prove that the proffered reason was merely pretext for retaliation and that the employer's action was prompted by an impermissible motive." *Id.*

Gutierrez's complaint misrepresents the factual circumstances surrounding her departure and has failed to satisfy her burden of establishing a credible *prima facie* case of retaliation. First, the Record indicates that Gutierrez was not terminated by Henoch, but rather that she voluntarily left her employment. Although Henoch was not fully satisfied with Gutierrez's performance, he indicated that she could remain on the job in the hope that she might improve. In addition, Henoch offered to help her secure other employment if she chose to leave. Henoch's payment of severance pay does not warrant a different conclusion. It simply is evidence of Henoch's desire to position Gutierrez in good standing prior to her departure from the practice.

Henoch articulated valid, nondiscriminatory reasons for Gutierrez's departure which Gutierrez failed to establish were merely pretextual. Gutierrez cites a letter of recommendation written by Henoch on her behalf as evidence she was a good worker. She was not terminated for cause or as retaliation for events that occurred in the workplace. This letter makes no mention of Gutierrez's actual on-the-job performance about which there were statistical grounds for criticism and was merely intended to assist Gutierrez in her pursuit of a physician assistant license.

### IV. Conclusion.

The Court resolves the issues of credibility herein in favor of the defendant and against the plaintiff. Based on the evidence in the Record, the circumstances existing in the offices and the reasonable inferences to be drawn therefrom, it is determined that Gutierrez's claims of sexual harassment and retaliation were without merit.

The Complaint is dismissed on the merits, with costs to the defendants.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law required by Fed.R.Civ.P. 52(a).

SO ORDERED