**Shayne KAHN, Plaintiff,**

v.

**OBJECTIVE SOLUTIONS, INTL. and Steven B. Wolfe, individually and as Owner and President of Objective Solutions, Intl., Defendants.**

**No. 99 Civ. 9067(RWS).**

United States District Court,
S.D. New York.

March 8, 2000.

Kaiser Saurborn & Mair, New York City, by Daniel J. Kaiser, Jason M. Corrigan, of counsel, for plaintiff.

Rosenman & Colin, New York City, by Lauren Reiter Brody, of counsel, for defendants.

## OPINION

SWEET, District Judge.

Defendants Objective Solutions, Intl. ("OSI") and Steven B. Wolfe ("Wolfe") (collectively, the "Defendants") have moved under Rules 12(b)(1), 12(b)(6) and 9(c), Fed.R.Civ.P., to dismiss the complaint of plaintiff Shayne Kahn ("Kahn") for lack of jurisdiction and for failure to state a claim upon which relief may be granted. For the reasons set forth below, the motion is granted and the complaint dismissed.

Kahn, who engaged in consensual sexual relations with Wolfe, her employer, was fired at the insistence of the latter's wife. Subjectively, Wolfe behaved like a cad. However, while objectively all sexual activity between the genders requires some discrimination, not all such activity gives rise to a cause of action.

### Prior Proceedings

On August 20, 1999, Kahn filed her Complaint in this action. Kahn filed an Amended Complaint on December 2, 1999.

The Amended Complaint contains four claims. The first claim is asserted against OSI alone for gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e. The second and third claims are asserted against both OSI and Wolfe for gender discrimination in violation of both the New York State Human Rights Law (the "Hu-

man Rights Law"), N.Y.Exec.Law § 296, and the New York City Administrative Code (the "Administrative Code"), N.Y.C.Admin.Code § 8–502(a). The fourth claim is asserted against OSI and Wolfe for violation of New York's Civil Rights Law (the "Civil Rights Law"), N.Y.Civ.Rights Law § 40–c. The Amended Complaint seeks actual and punitive damages of several million dollars, as well as attorneys' fees, disbursements, and costs.

The Defendants' motion to dismiss was heard and marked fully submitted on December 15, 1999.

### The Facts

On a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in favor of the plaintiff. *See Cruz v. Coach Stores*, 202 F.3d 560, 562 (2d Cir.2000); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). Accordingly, the factual allegations considered herein are taken from Kahn's Amended Complaint and do not constitute findings of fact by the Court. They are presumed to be true only for the purpose of deciding the present motion.

Kahn, a resident of New York City, is a former employee of OSI, a company with offices at 535 Fifth Avenue in New York City. Wolfe is the owner and president of OSI.

Kahn was employed by OSI as a Senior Executive Recruiter from June of 1996 until August of 1998. She was an "exemplary employee with a flawless work history," and was neither criticized nor disciplined at any time during her employment by OSI. During the tenure of her employment, however, she had a consensual "sexual relationship" with Wolfe.

On August 13, 1998, following consensual sex, Wolfe told Kahn that he was terminating their relationship because his family "disapproved," and that she was fired. Wolfe suggested that Kahn "call his wife at her therapist's office and 'beg' for her job back." Kahn "complied" with Wolfe's humiliating request, but Wolfe's wife rejected Kahn's pleas, and Kahn "remained terminated." According to Kahn, Wolfe told her that "if he could not be intimate with her he no longer wanted her around."

### Discussion

#### I. *The EEOC's Issuance of an Early Right–To–Sue Letter Does Not Divest The Court of Jurisdiction*

On June 1, 1999, Kahn filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). On August 12, 1999, pursuant to Kahn's request, the EEOC issued Kahn a right-to-sue letter.

The Defendants urge that the EEOC's issuance of a right-to-sue letter prior to the expiration of the 180–day period provided for in 42 U.S.C. § 2000e–5(f)(1) deprives this Court of jurisdiction. This position has been considered and rejected by a number of appellate and district courts,[1] and upheld by others.[2]

To add unnecessarily to these divergent lines of authority would simply be an act of hubris. In *Figueira v. Black Entertainment Television, Inc.*, 944 F.Supp. 299 (S.D.N.Y.1996), the Honorable Michael B. Mukasey carefully and thoroughly ana-

---

1. *See, e.g. Sims v. Trus Joist MacMillan*, 22 F.3d 1059 (11th Cir.1994); *Saulsbury v. Wismer & Becker, Inc.*, 644 F.2d 1251 (9th Cir. 1980); *Palumbo v. Lufthansa German Airlines*, No. 98 Civ. 5005(HB), 1999 WL 540446 (S.D.N.Y. July 26, 1999); *Rosario v. Copacabana Night Club, Inc.*, 97 Civ.2052(KTD), 1998 WL 273110 (S.D.N.Y. May 28, 1998); *Parker v. Noble Roman's, Inc.*, No. IP–96–65–C–D/F, 1996 WL 453572 (S.D.Ind. June 26, 1996).

2. *Martini v. Federal Nat'l Mortgage Ass'n*, 178 F.3d 1336 (D.C.Cir.1999), *cert. dismissed*, —— U.S. ——, 120 S.Ct. 1155, —— L.Ed.2d —— (2000); *Rodriguez v. Connection Tech. Inc.*, 65 F.Supp.2d 107 (E.D.N.Y.1999); *Stetz v. Reeher Enters., Inc.*, 70 F.Supp.2d 119 (N.D.N.Y. 1999); *Olszewski v. Bloomberg L.P.*, No. 96 CV 3393(RPP), 1997 WL 375690 (S.D.N.Y. July 7, 1997).

lyzed the relevant statutes, regulations, and authorities and concluded that the issuance of an early notice of right to sue is neither prohibited by Title VII nor prevents a District Court from exercising its jurisdiction. *See id.* at 308. This Court is in agreement. The early issuance of a right-to-sue letter in this case therefore would not deprive this Court of jurisdiction.

## II. *The Amended Complaint Fails To State A Claim For Gender Discrimination*

■ The gravamen of Kahn's claims is found in her allegation that she "was discharged because of Wolfe's desire to end their sexual relationship." Terminating an affair under such circumstances does not constitute gender discrimination.

Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e–2(a)(1), provides that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual ... because of such individual's ... sex." Similar statutory language may be found in New York's State and Municipal laws and regulations. *See* N.Y.Exec. Law § 296(1)(a) ("It shall be an unlawful discriminatory practice [f]or an employer ..., because of the ... sex ... of any individual, ... to discriminate against such individual...."); N.Y.C.Admin.Code § 8–107(1)(a) ("It shall be an unlawful discriminatory practice ... [f]or an employer ..., because of the actual or perceived ... gender ... of any person ... to discriminate against such person....").

The Second Circuit has considered whether Title VII's prohibition against discrimination "on the basis of sex" encompasses disparate treatment premised not on one's gender, but rather on a romantic relationship between an employer and an employee. *See DeCintio v. Westchester County Med. Ctr.*, 807 F.2d 304, 306 (2d Cir.1986). The Court of Appeals held in that case that "voluntary, romantic relationships cannot form the basis of a sex discrimination suit under either Title VII

or the Equal Pay Act." *Id.* at 308. Similar results have obtained in other cases concerning claims of employment discrimination arising out of consensual romantic relationships. *See Taken v. Oklahoma Corp. Comm'n,* 125 F.3d 1366, 1369–70 (10th Cir. 1997); *Huebschen v. Department of Health & Social Servs.,* 716 F.2d 1167, 1172 (7th Cir.1983); *Hood v. Kaplan Educ. Ctr.,* 60 F.Supp.2d 1, *2–3 (D.Conn.1999); *Bush v. Raymond Corp.,* 954 F.Supp. 490, 498 (N.D.N.Y.1997); *Campbell v. Masten,* 955 F.Supp. 526, 528–29 (D.Md.1997); *Freeman v. Continental Tech. Servs., Inc.,* 710 F.Supp. 328, 331 (N.D.Ga.1988); *see also Mastrototaro v. Consolidated Edison Co. of N.Y., Inc.,* No. 87 Civ. 6962(CSH), 1990 WL 47709, at *2 n. 2 (S.D.N.Y. April 12, 1990) ("Plaintiff's allegations centering on a consensual romantic involvement with a married member of Con Edison management do not form the basis for a sex discrimination claim.... The prohibitions against sex discrimination address themselves not to discrimination on account of one's sexual relationships, but rather to discrimination based on one's gender in and of itself.").

Similarly, New York courts have held that employment decisions predicated upon the existence or termination of consensual romantic relationships do not give rise to claims of gender discrimination. *See Mauro v. Orville,* 259 A.D.2d 89, 697 N.Y.S.2d 704, 707–08 (3d Dept.1999); *Nicolo v. Citibank New York State, N.A.,* 147 Misc.2d 111, 113–115, 554 N.Y.S.2d 795, 798–99 (Sup.Ct.1990). In *Mauro,* as in the instant case, the defendant had a sexual relationship with an employee. *See Mauro,* 697 N.Y.S.2d at 706. As here, the defendant terminated the relationship in order to reconcile with his wife, and the employee was discharged—the wife objecting to her continued employment. *See id.* Nevertheless, the *Mauro* court rejected the plaintiff's claims of sexual harassment and discriminatory discharge, indicating that "[a]lthough surely antithetical to good business practices, discrimination against

an employee on the basis of a failed voluntary sexual relationship does not of itself constitute discrimination because of sex." *Id.* at 707 (citations omitted).

■ Furthermore, to make out a *prima facie* case of *quid pro quo* sexual harassment, a plaintiff must allege that (i) she was subject to unwelcome sexual conduct or an unwelcome sexual advance, and (ii) her reaction to that conduct was used as the basis for an employment decision. *See Barcher v. New York Univ. Sch. of Law,* 993 F.Supp. 177, 184 (S.D.N.Y.1998), *aff'd,* 172 F.3d 37 (2d Cir.1999); *Gutierrez v. Henoch,* 998 F.Supp. 329, 334 (S.D.N.Y. 1998). "The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 68, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

Kahn has not asserted that her continued sexual relationship with Wolfe was an unwelcome condition of her employment, or that she was discharged because of her refusal to submit to sexual requests. Instead, she asserts that she was discharged in the wake of Wolfe's decision to terminate their relationship. This does not constitute *quid pro quo* harassment.[3] *See, e.g., Huebschen,* 716 F.2d at 1171–72; *Holtz v. Marcus Theatres Corp.,* 31 F.Supp.2d 1139, 1148 (E.D.Wis.1999); *Campbell,* 955 F.Supp. at 530; *Mauro,* 697 N.Y.S.2d at 708.

Kahn has sought to distinguish these authorities by alleging that Wolfe did not want Kahn in his employ unless he could have a sexual relationship with her. By this allegation Kahn seeks to establish that a sexual relationship was a condition of her employment, but a difficulty arises from the fact that the relationship was consensual and not unwelcome. Here, Wolfe terminated Kahn's employment immediately after their last encounter, and sought no further sexual contact.

The law against sexual harassment protects an employee from being harassed or coerced by unwelcome sexual advances. Kahn seeks to alter this purpose to grant to a participant in a completely voluntary relationship with her superior a claim when her employment is terminated at the end of the affair. There is no authority or logic for such an extension. Rejection and discrimination are not synonymous.

■ Moreover, while Kahn has also articulated a hostile work environment claim, to make such a claim a plaintiff must allege that her "workplace is permeated with discriminatory intimidation, ridicule, and insult, . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal references omitted). "The incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997) (*quoting id.*); *see Meritor Sav. Bank,* 477 U.S. at 67, 106 S.Ct. 2399 ("For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment"). Conduct that is "merely offensive, unprofessional or childish is not discriminatory conduct proscribed by Title VII." *Cosgrove v. Federal Home Loan Bank of N.Y.,* No. 90 Civ. 6455(RPP), 1999 WL 163218, at *20 (S.D.N.Y. Mar.23, 1999).

Kahn has failed to set forth any harassing conduct or any intimidation, ridicule, or

---

**3.** It is true that Kahn asserts that she "attempted to end the relationship but Wolfe insisted that the relationship continue." This allegation alone does not rescue Kahn's Amended Complaint, however, as Kahn does not contend that her continued sexual relationship with Wolfe was unwelcome or that her efforts to end the relationship led to termination of her employment (or any other adverse employment action). As noted above, it is Kahn's position that it was Wolfe who terminated their relationship, and that she was discharged thereafter.

insult arising from her relationship with Wolfe, and her termination—no matter how unpleasant—does not create a hostile work environment. *See e.g., Succar v. Dade County Sch. Board,* 60 F.Supp.2d 1309 (S.D.Fla.1999) (dismissing hostile work environment claim where plaintiff had a sexual relationship with colleague, noting that any "harassment arises not out of the fact that Plaintiff is male, but rather, out of the termination of the intimate physical and emotional relationship . . . [the colleague] shared with him").

■ The allegation that Wolfe instructed Kahn "to call his wife at her therapist's office and 'beg' for her job back," is not the kind of severe or pervasive conduct required for a hostile work environment claim. It is, at most, a degrading and humiliating episode which occurred after the sex and the termination.

Participation in a consensual office affair does not constitute actionable gender discrimination when the termination of the affair results in discharge. It may constitute unfair and certainly unchivalrous behavior, but not discrimination because of gender.

On the basis of these authorities, and in the absence of any coherent allegation that Kahn's termination was the result of her rejection of sexual advances or that any advances she was subjected to were unwelcome, Kahn's gender discrimination claims will be dismissed. Since her state and municipal claims are governed by essentially the same standards as her Title VII claim, *see Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 n. 4 (2d Cir.1995); *Dimino v. New York City Transit Auth.,* 64 F.Supp.2d 136, 145 n. 3 (E.D.N.Y.1999); *Ortega v. New York City Off–Track Betting Corp.,* No. 97 Civ. 7582(KMW), 1999 WL 342353, at *3 (S.D.N.Y. May 27, 1999); *Alie v. NYNEX Corp.,* 158 F.R.D. 239, 244 (E.D.N.Y.1994), her second, third, and fourth causes of action shall be dismissed along with her Title VII claim.

*Conclusion*

The Amended Complaint is dismissed with prejudice and without costs and disbursements. Submit judgment on notice.

It is so ordered.